IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ESPERANZA GUERRERO, *et al.,* | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) Civil Action No. 1:09-cv-1313 (JCC/TRJ) |
| | ) |
| PRINCE WILLIAM COUNTY POLICE | ) |
| CHIEF CHARLIE T. DEANE, *et al.,* | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

COME NOW THE DEFENDANTS, CHARLIE T. DEANE IN HIS OFFICIAL

CAPACITY; (SERGEANT) DAVID L. MOORE, (OFFICER) LUIS POTES,

(OFFICER) ADAM HURLEY, DOES 1-6 AND ROES 1-5, PRINCE WILLIAM

COUNTY POLICE DEPARTMENT AND PRINCE WILLIAM COUNTY, by counsel,

in response to plaintiffs' Complaint, and pursuant to Federal Rules of Civil Procedure

12(b)(6) and 56(f), submit their Memorandum of Points and Authorities in Support of

their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

### I. Background

This case arises out of plaintiffs' claims of federal civil rights and state-law tort

violations. Only the adult plaintiffs Esperanza and Juan Guerrero allege any physical

touching by police; all other plaintiffs are minors and one adult female who do not allege

physical touching by police.

1

Plaintiffs begin their fact assertions with statements about a resolution passed by the Board of County Supervisors of Prince William County concerning immigration, and allege that since that resolution was passed, "Prince William County police officers have more aggressively targeted and wrongfully arrested many Hispanic citizens." *Complaint, paras. 16-18.* The Complaint contains no other allegations about this resolution and no allegations that any defendant took any action based on the resolution or on the basis of animus toward any race or immigration status. In fact, the Complaint drops this subject entirely after the initial allegations about the resolution, implying that plaintiffs could identify no defendant action relevant to this case that resulted from the resolution and no defendant action based on discrimination or immigration status.

Plaintiffs allege (I) unreasonable search and seizure (presumably as to all plaintiffs) in violation of their rights under the Fourth Amendment to the United States Constitution (as applied through Title 42 U.S.C., Section 1983) as a result of alleged actions of defendants Moore, Potes, Hurley and "DOE"; (II) excessive use of force against Mr. and Mrs. Guerrero in violation of their rights under the Fourth Amendment to the United States Constitution as a result of alleged actions of defendants Moore, Potes and "ROE"; (III) state-law tort of assault as to Mr. and Mrs. Guerrero in violation of Va. Code Section 18.2-57 as a result of alleged intentional actions of defendants Moore, Potes and "ROE";  (IV) state-law tort of battery as to Mr. and Mrs. Guerrero in violation of the Virginia Code as a result of alleged intentional actions of defendants Moore, Potes and "ROE";  (V) state-law tort of false arrest and imprisonment as to Mr. and Mrs. Guerrero in violation of the Virginia Code as a result of alleged intentional actions of defendants Moore, Potes, Hurley, "DOES" and "ROES";  (VI) common-law tort of

2

intentional infliction of emotional distress as to all plaintiffs in violation of Virginia law as a result of alleged intentional actions of defendants Moore, Potes, Hurley, "DOES" and "ROES"; and (VII) common-law tort of negligent infliction of emotional distress as to all plaintiffs in violation of Virginia law as a result of alleged intentional actions of defendants Moore, Potes, Hurley, "DOES" and "ROES". Plaintiffs pray for declaratory relief and damages including punitive damages.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Harrison v. Prince William County*, No. 1:08cv677 (JCC), E.D. Va. 2/10/09; *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In deciding a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Id.; Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* A motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C. P. 8(a)(2). While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.; Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007).

Where "matters outside the pleading are presented to and not excluded by the court," a 12(b)(6) motion may be converted to a motion for summary judgment. *Id.*; Fed. R. Civ. P. 12(b). Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.*; see F.R.C.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 958-59 (4th

Cir. 1996) (citations omitted). In reviewing the record on summary judgment, "the court

must draw any inferences in the light most favorable to the non-movant" and "determine

whether the record taken as a whole could lead a reasonable trier of fact to find for the

non-movant." Id.; *Brock v. Entre Computer Ctrs, Inc.,* 933 F.2d 1253, 1259 (4th Cir.

1991) (citations omitted). Once a motion for summary judgment is properly made and

supported, the opposing party bears the burden of showing that a genuine dispute exists.

*Id.; see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986).

### III.  Statement of Material Undisputed Facts

The following facts are drawn from the Affidavits of Sergeant David Moore and

Officers Potes, Caplan and Hurley; and Exhibits A through E, filed this day; and the

allegations of the Complaint.

Moore, Potes, Caplan and Hurley are Police Sergeant and Police Officers

employed by the Prince William County Police Department.  On Saturday, November 24,

2007, at approximately 11:28 a.m., they were wearing their blue, police-issued uniforms

with the police badge on the front of the shirt, and each was driving a County-issued,

marked police car.  Moore wore his handcuffs in front and police radio on his left side.

Moore's duties that day included serving warrants.

Moore had one remaining warrant to serve that day.  That warrant and its cover

sheet are attached to his Affidavit as *"Exhibit A."*  A review of Exhibit A shows the

warrant was to be served on a female named Antonia Mungia.  The address shown on the

warrant as Ms. Mungia's residence was also the address of Mr. and Mrs. Guerrero in

Manassas, VA.  The cover sheet also shows that service had been attempted previously

4

on October 27, 2007 but no one answered the door at that time, although "subject [was seen] looking out window" and a police form was left at the house concerning the warrant. The court date had passed without Ms. Mungia appearing, so Moore intended to inform her when he served the warrant that the court date would be re-set. Based on the information shown on the cover sheet and warrant, Moore had a reasonable belief that the subject, Ms. Mungia, lived at that address and could be found there, and may be attempting to evade service.

Moore knocked on the door of the address shown on the warrant, and a woman later identified as Esperanza Guerrero answered. When she opened the door, Moore asked for Antonia Munguia. It was obvious he was there on police business, as he was dressed in his uniform and, according to the Complaint, identified himself "I am the police." *Complaint, para. 23.* As alleged in the Complaint, Mrs. Guerrero told him "she would be more than happy to take his business card." *Complaint, para. 22.* Moore asked Mrs. Guerrero if Ms. Mungia lived there and Mrs. Guerrero replied "yes." (The Complaint states that Mrs. Guerrero told him that Antonia Mungia did not live there, but this is immaterial because based on the information shown on the warrant, Moore had a reasonable belief that Mungia lived there and was home, and was attempting to evade service of the summons.)

Mrs. Guerrero said that Ms. Mungia was not there right now. Then she said, "you can give me a card, and I will have her call you." When Mrs. Guerrero opened the door, she was standing in a narrow foyer area with stairs going up behind her. To her left, there was a half wall opening to the upper level. Mrs. Guerrero kept the door partly closed, so Moore couldn't see what was going on in the house beyond the foyer. He could hear

5

people inside the house but, because the door was only partly open, could not hear them well. Moore was standing outside the front door on a narrow concrete stoop with steps behind him.

At that point, Mrs. Guerrero seemed calm and interested in what Moore was telling her. Some of the information was personal to the subject of the warrant and Moore did not provide that information to her. Moore intended to pull out his business card to give to her, and the Complaint alleges that Mrs. Guerrero asked for his card.

As Moore spoke to Mrs. Guerrero, she glanced off to her left side. Moore could not tell what she was looking at. She took a step backward into the foyer. Moore took a step forward so that he could continue with what he was telling her, and give her a business card. Moore went no further than the door frame of the front door. He continued to hear other people inside the residence but from where he stood, he couldn't see anyone else. Based on his experience in serving warrants, this was a dangerous position for him to be in because the subject of the warrant may have been waiting out of sight, gesturing for Mrs. Guerrero not to reveal her, or may even have a gun or be ready to attack. Moore stood in the doorway between the door frame, intending to look about to see if someone who could be Ms. Mungia was present. In fact, another adult female (Ms. Mungia's mother) and Ms. Mungia's teen-aged children were present. *Complaint, paras. 19, 34.*

At this time Moore was thinking Ms. Mungia was there, but that Mrs. Guerrero was hiding this fact by was telling Moore she was not there. Moore told Mrs. Guerrero that he did not intend to make a physical arrest at that time, but just wanted to get Ms. Mungia's identification and hand her the summons and fill out the paperwork. Mrs.

Guerrero understood that Moore wanted this information, and told her husband so. *Complaint, para. 29.* Based on his experience with serving warrants of this type, Moore believed that Ms. Mungia may have been listening out of sight, and if she heard that Moore intended to give her the summons but not take her away, Ms. Mungia might come out and identify herself and take the summons. Mrs. Guerrero might then say, "Oh, I didn't know she was here!" In Moore's experience, the subject of a warrant wants to know why he is there. In this case, Moore thought Ms. Mungia probably was home, but Mrs. Guerrero didn't want to tell him she was home.

While Moore was talking to her, Mrs. Guerrero stepped back and opened the door further. It seemed to Moore that she wanted someone inside the house to hear what was going on. She was glancing to the left as if seeing someone, and wanting someone else to hear what was going on. Moore has had occasions to serve warrants when someone has been there, but didn't know what he wanted, and did not come forward, and then when they found out why he was there, they came forward. Moore thought that might be happening this time. His intent at that time was not to physically arrest Ms. Munguia, but to get her identification and hand her the summons and have her accept it.

As Moore was talking to her, Mrs. Guerrero backed up into the foyer and opened the door wider. Moore took a step forward to continue talking to her and to give her his card. Mrs. Guerrero had asked for his card, and as she did not step outside to take the card, it appeared that she was inviting him in so he could hand her the card. Moore did not come all the way inside, just right inside the door frame. If he had had the chance, he would have looked around to see if Ms. Mungia was present.

Suddenly, without any warning, Mrs. Guerrero charged forward and slammed her left forearm and hand against Moore's chest, shoving him backward onto the stoop toward the concrete steps outside. She then began to slam the door closed on Moore's side and screamed loudly at him. At that point Moore believed in good faith there was probable cause that a crime was being committed; that is, Mrs. Guerrero had assaulted and battered a police officer when she hit and shoved Moore. Moore told her at least twice to stop touching him, and she screamed, "You're in my house!" and continued to push him with her left arm.

Moore told her she was under arrest for assault and battery. She continued to push him and shouted "I'm not under arrest!" Moore pulled out my handcuffs and placed a cuff on her left wrist but was unable to tighten it because Mrs. Guerrero wrenched her left wrist free and tried to back up into the house. She continued to try to slam the door closed on Moore's leg and foot. She continued to push against the door and would not comply with Moore's requests that she stop.

Moore took out his police radio and called for additional police units to help him. He later learned that the dispatcher was so alarmed at the noises heard on the radio that the dispatcher assumed Moore was in bad trouble, and dispatched the call for assistance as a "Signal One," which is the highest priority call for assistance when an officer is in trouble and officers from all over the County respond to help. When Moore realized the call had been dispatched as a Signal One and there were many officers rushing to help, he called dispatch back. He thought he could keep the situation at bay until other officers arrived, so he advised dispatch that only three police cars from the west end of the County needed to respond and they could respond in normal mode. Moore did not think

he needed every available officer on both the west and east ends of the County to respond because at that point he thought he could maintain the situation with the one woman pushing on the door against his leg, although he heard other voices inside and because of the potential danger, did not want to enter to make the arrest without police backup. Mrs. Guerrero continued to scream and push on the door against Moore. The Communications records are attached to Moore's Affidavit as "*Exhibit B.*"

Officers Potes, Caplan and Hurley arrived and Moore told them he intended to arrest the woman on the other side of the door for assault and battery on a law enforcement officer. They saw the door being pushed closed on Moore's leg. The officers pushed the door open and Moore attempted to arrest Mrs. Guerrero. She fought and struggled and screamed in the narrow foyer entrance. She grabbed onto the banister and would not let go, and lowered herself to the floor to evade arrest. Moore thought he could get her handcuffed so he told the other officers not to use pepper spray on her, and eventually with the assistance of another officer, they were able to free her grip from the banister and handcuffed.

Other people were running around the residence, all shouting and appearing upset. Officer Potes shouted at them in English and Spanish to keep back, but they advanced on the officers. Officer Potes pulled out his pepper spray and warned them to stay back, but an adult man, Juan Guerrero, advanced down the stairs and tried to grab Mrs. Guerrero or grab at Sergeant Moore or his gun. Fearing for Moore's safety, Officer Potes used pepper spray on the man and he retreated. Officer Caplan went to handcuff Mr. Guerrero while Officer Potes covered him, and initially Mr. Guerrero pulled his hand back and squared off with Officer Caplan but when warned, submitted to handcuffing.

Mr. and Mrs. Guerrero were then walked outside and Fire and Rescue was called, and the medics washed out Mr. Guerrero's eyes. He refused further medical treatment. He was taken to the Prince William-Manassas Regional Adult Detention Center ("ADC") for further processing, charged with Obstruction of Justice and released. His Adult Detention Center booking records *(Exhibit D)* report no injuries.

Moore does not remember if he told a female officer to tighten Mrs. Guerrero's handcuffs, but if he did, he would have told her to do so outside a police car because it is very difficult to reach handcuffs inside a car. Moore had no intention that the handcuffs be tightened any more than necessary to secure Mrs. Guerrero's hands and keep her from wrenching them free again. When she was walking outside, Mrs. Guerrero yelled at Moore, "You fucking black people!" and "You cops think we are ignorant!"

Moore took Mrs. Guerrero to the ADC for further processing. Moore does not remember telling Mrs. Guerrero to lean back in the police car, but if he did so, it was because he could not unbuckle her seatbelt and get her out of the police car if she was leaning forward. Moore did not intend to hurt her hands or arms and he did not do anything to make them more uncomfortable than necessary. She did not appear to be seriously hurt and said nothing that made Moore think she was seriously hurt. If there were red marks or bruises on her wrists or arms, they would have resulted from her wrenching her left wrist out of the handcuff and fighting the officers who were trying to release her grip on the banister.

Mrs. Guerrero was charged with Resisting Arrest/Obstruction of Justice and Assault and Battery on a Law Enforcement Officer. The Magistrate held her on no bond. Her booking statement indicates the only injuries reported were bruised right forearm and

left elbow.  The Police Incident Information records for both Mr. and Mrs. Guerrero are

attached to Moore's Affidavit as *"Exhibit C"* and the ADC records are attached as

*"Exhibit D."*  Photographs taken of Mrs. Guerrero's arms that day at the ADC are

attached to Moore's Affidavit as *"Exhibit E."*

Based upon their observations under all the circumstances, Moore and the other

officers believed in good faith there was probable cause that one or more crimes were

being committed when Mrs. Guerrero struck Moore and pushed him with the door;

refused to stop pushing him; refused to submit to arrest; wrenched her hand out of the

handcuff; and continued to push the door closed on Moore's leg and foot; and when Mr.

Guerrero rushed down the steps and grabbed at his wife and/or Moore, interfering with

the arrest.  At all times relevant to this incident Moore and the other officers acted in the

good faith belief that they used only the force that was necessary to prevent Mr. and Mrs.

Guerrero from harming the officers and to make the arrests; and to prevent further harm

to anyone present.

## IV. Analysis

**A. No material issues of fact are in dispute concerning the actions of defendants Moore, Potes, Hurley, Does and Roes; Moore acted lawfully under state law in serving a warrant, and all these defendants acted reasonably in their belief that Moore was under attack, and therefore these defendants' entry into the residence and the force they used to resist attack and to arrest was reasonable.**

i. Fourth Amendment search and seizure/state law false arrest and false
imprisonment claims.

The Fourth Amendment to the United States Constitution forbids unreasonable

searches and seizures.  U.S. Const. Amend. IV; *Harrison v. Prince William County*, No.

1:08cv677 (JCC), E.D. Va. 2/10/09 at *15.  A search and seizure conducted without a

warrant requires probable cause.  *Brinegar v. United States*, 338 U.S. 160, 164, 175-76

(1949).  Probable cause exists when a police officer has knowledge of facts and circumstances that would allow "a man of reasonable caution" to believe that an offense "has been or is being committed." *Id.* at 175 (citation omitted).  In an action under Title 42 U.S.C., Section 1983, "the lawfulness of an arrest is determined under the law of the state in which the arrest was made." *Harrison* at *14; *Robinson v. Goff*, 517 F. Supp. 350, 353-54 (D. Va. 1981).

Sergeant Moore acted pursuant to a lawfully-issued summons warrant as shown by his Affidavit and *Exhibit A*, and therefore did not need probable cause to attempt to serve the warrant.  Pursuant to Va. Code Sections 19.2-74 and 19.2-76, his duty required him to go to Antonia Mungia's residence as shown on the warrant; and, if he had a reasonable belief that Ms. Mungia may be at home, get Ms. Mungia's identification and serve the warrant upon her.   If Ms. Mungia resisted service or refused to comply, the law required Sergeant Moore to bring her before the magistrate for proceedings in accordance with Va. Code Section 19.2-82.

Plaintiffs' search and seizure/false arrest/imprisonment claims turn on whether Moore had a reasonable belief that the warrant subject, Ms. Mungia, lived at the residence, and a reasonable belief that she was home.  He did have such a reasonable belief because the warrant specified the subject address as Ms. Mungia's address.  The warrant cover sheet, the noises in the home, Mrs. Guerrero's glancing to the side, and his experience in serving warrants all gave Moore reason to believe that Ms. Mungia was home but attempting to evade service.

Moore entered no further than the door frame of the home.  Mrs. Guerrero alleges she asked him to give her a business card.  Even assuming that Moore's stepping into the

door frame was an entry, and even assuming Mrs. Guerrero gave any indication prior to her sudden attack on him that Sergeant Moore was unwelcome, nevertheless Sergeant Moore had a legal right to enter the home to execute the warrant. *Smith v. Tolley*, 960 F. Supp. 977; 1997 U.S. Dist. LEXIS 5355 (1997), citing *Payton v. New York*, 445 U.S. 573, 586-87, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) (a warrant issued by a court "implicitly carr[ies] with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within); *United States v. Johnson*, 4 Fed. Appx. 169; 2001 U.S. App. LEXIS 2324 (4th Cir. 2001) (unpubl.), citing *United States v. Leon*, 468 U.S. 897, 921, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984) ("An officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. 'Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law'").

In Virginia, probable cause must justify a warrantless arrest. *Harrison* at *14; *Robinson v. Goff*, 517 F. Supp. 350, 353-54 (D. Va. 1981). Mrs. Guerrero had no right to push Moore and slam the door on Moore's body, and her doing so gave rise to probable cause that she was committing the serious crime of assault on a law enforcement officer. Therefore, Sergeant Moore had probable cause to arrest her. The other defendants, too, had probable to believe Mr. and Mrs. Guerrero were committing serious crimes of assault on a law enforcement officer and therefore they had probable cause to arrest.

The affidavits and exhibits make clear that all defendants were acting in the belief that Moore was under attack. Specifically, they saw him with his leg and foot caught in the front door with Mrs. Guerrero on the other side of the door pushing it shut on him. The officers saw Mr. Guerrero coming down the stairs and grabbing at them. All these

13

defendants entered and acted believing that a serious crime was being committed: attack on a law enforcement officer.

The undisputed facts demonstrate the reasonableness of Moore's actions. He did not enter the house, as he went no further than the door frame. Mrs. Guerrero alleges in the Complaint that she asked to take his business card but did not exit the house; therefore, she must have expected him to approach her. *Complaint, para. 22.* She admits she tried to close the door on him even though she knew that he was a police officer who wanted to speak to Ms. Mungia. *Complaint, paras. 22-24.* Mrs. Guerrero knew that on October 27, 2007 a police form had been left at the door stating that warrant service had been attempted on Ms. Mungia. *Exhibit A, cover sheet.* Mrs. Guerrero never alleges that she asked Moore to leave and she never alleges she felt threatened by him before trying to close the door on him. *Complaint, para. 24.* All later events flow from Mrs. Guerrero's slamming the door on Moore.

Plaintiffs cannot dispute that Sergeant Moore reasonably believed Antonia Mungia's residential address to be that which is shown on the warrant; that is, the address where the incident took place. Plaintiffs cannot dispute that the warrant's cover sheet suggested to Sergeant Moore that Ms. Mungia may be present and attempting to evade service. They cannot dispute that upon hearing voices inside the residence and seeing Mrs. Guerrero glace to the side, Sergeant Moore reasonably believed that Ms. Mungia was at home. They admit Ms. Mungia's mother and two children were present and admit the two children left that evening; therefore, one can reasonably infer that Ms. Mungia was at home at some point during the day.

For all these reasons, defendants submit that plaintiffs' Fourth Amendment search and seizure and state-law false arrest/false imprisonment claims should be dismissed.

ii. Fourth Amendment excessive force/state law assault and battery claims.

When a plaintiff alleges that an officer has used excessive force, the officer's actions are analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Harrison, supra* at *16. The "reasonableness" of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 395 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22) (1968). The inquiry must take into account that "police officer are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

*Graham* provides three factors to guide the objective reasonableness inquiry: (1) "the severity of the crime"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect is resisting arrest or attempting to flee. *Id.* at 396. Here, all three *Graham* factors weigh in the defendants' favor: (1) Mrs. Guerrero's attack on Sergeant Moore was a serious offense; (2) Mrs. Guerrero slammed the door on Moore and continuing pushing on his leg despite his commands to her to stop, and Mr. Guerrero charged at the officers and would not back down despite commands to do so; (3) Mrs. Guerrero fought arrest and screamed that she was not under arrest, and Mr. Guerrero appeared to the officers to be grabbing Mrs. Guerrero and/or reaching for Moore's gun and interfering with Mrs. Guerrero's arrest.

Further, as shown by their booking records and photographs, any injuries to Mr. and Mrs. Guerrero were minor; in fact, the alleged bruises hardly show up in photographs

and Mr. Guerrero refused medical treatment. *Exhibits D and E.* No defendant displayed

a weapon other than pepper spray. *Complaint, para. 31.* Sergeant Moore instructed the

other officers not to use pepper spray on Mrs. Guerrero, which shows he was determined

to minimize the force used. *Complaint, para. 35.* Mrs. Guerrero had already wrenched

her hand free of a handcuff; therefore Moore acted reasonably if he instructed a female

officer to tighten the cuff. Further, he acted reasonably in asking Mrs. Guerrero to lean

back so he could help her out of the police car.

For all these reasons, plaintiffs' claims of Fourth Amendment excessive force and

state-law assault and battery should be dismissed.

**B. All defendants are entitled to qualified immunity from this lawsuit.**

Police officers sued under Section 1983 have the benefit of qualified immunity,

which protects them from civil suits when their performance of discretionary functions

"does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harrison, id.* at *13; *Harlow v. Fitzgerald,* 457

U.S. 800, 818 (1982). Qualified immunity is an immunity from suit, not merely a

defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 524 (1985) see *Sigman v. Town of

Chapel Hill,* 161 F.3d 782, 786 (4th Cir. 1998).

In *Saucier v. Katz,* the Supreme Court set out a two-step inquiry for lower courts

to use to determine whether the defense applies. *Harrison at *13-14; Saucier v. Katz,*

533 U.S. 194, 201-02 (2001). The decision specified both prongs of the inquiry and the

order in which each must be considered. First, a Court determines whether, "[t]aken in

the light most favorable to the party asserting the injury," the facts alleged by that party

"show the officer's conduct violated a constitutional right." *Id.* at 201. If a constitutional

16

violation did occur, the court then asks "whether the right was clearly established." *Id.* at 202. In making this second inquiry, the court "ascertains 'whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law.'" *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); but see *Pearson v. Callahan*, _ S. Ct. _, 2009 WL 128758, at *9 (Jan. 21, 2009) (judges are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand).

Even if any of the defendants committed a constitutional violation, they are entitled to qualified immunity because their actions were objectively reasonable in light of clearly established law. Sergeant Moore had a right and a duty to attempt to serve the warrant on Ms. Mungia at the home where he reasonably believed she lived and was present. Moore and the other officers had probable cause to arrest Mr. and Mrs. Guerrero for the crime of attacking Sergeant Moore. The officers' affidavits show they used only reasonable force to stop Mrs. Guerrero's attack and Mr. Guerrero's interference with the arrest; the injuries were minor and recovery was quick. Sergeant Moore instructed the other officers not to use pepper spray on Mrs. Guerrero, which shows he was determined to minimize the force used. Mrs. Guerrero had already wrenched her hand free of a handcuff; therefore Moore acted reasonably in instructed a female officer to tighten the cuff, and only minor redness resulted.

For all these reasons, the defendants are entitled to qualified immunity from this lawsuit.

**C. The Complaint should be dismissed as to defendants Police Chief Deane, Prince William County and its Police Department.**

Defendants Police Chief Deane, Prince William County and its Police Department ("PWC") submit this action should be dismissed as to them. The doctrine of *respondeat superior* does not exist under Section 1983, and the defendant officers' actions cannot be imputed to their employer. *Harrison v. Prince William County*, No. 1:08cv677 (JCC), E.D. Va. 2/10/09; *see Sandlin v. Johnson*, 643 F.2d 1027, 1029 n.3 (4th Cir. 1981).

A local governing body may be sued under Section 1983 when unconstitutional actions are taken in the course of executing a governmental policy or custom. *Harrison v. Prince William County*, No. 1:08cv677 (JCC), E.D. Va. 2/10/09; *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978). "Where the constitutional deprivation is not an official act of the municipality...recovery lies only against the officer in his official capacity." *Id.; Moultrie v. Mitchell*, 1995 WL 24891, at *1 (4th Cir., Jan. 18, 1995) (citing *Hughes v. Blankenship*, 672 F.2d 403, 405-05 (4th Cir. 1982).

In this case Moore was lawfully serving a warrant when Mrs. Guerrero attacked him, and the other officers acted lawfully in attempting to protect him and arrest the attackers. To the best of their knowledge, a serious crime was being committed--assault on a law enforcement officer--and they acted reasonably in response thereto. Therefore, the officers engaged in no unconstitutional policy or custom, and PWC cannot be liable for such.

A claim for supervisory liability cannot rest on *respondeat superior*. *Harrison v. Prince William County*, No. 1:08cv677 (JCC), E.D. Va. 2/10/09; *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). A claim for supervisory liability requires (1) "actual or constructive knowledge of a risk of constitutional injury"; (2) deliberate indifference to

18

that risk"; and (3) "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Id.* (citation omitted). Supervisors can be liable where their "corrective inaction amounts to deliberate indifference or tacit authorization" of "a pervasive and unreasonable risk of harm from some specified source." *Id.* No such indifference existed here; to the contrary, all officials acted lawfully and reasonably in accordance with police department policy and training.

Further, defendant Prince William County Police Department is merely an arm of Prince William County, and cannot be sued. "In Virginia, an operating division of a government entity cannot be sued unless the legislature has vested the operating division with the capacity to be sued." *Harrison v. Prince William County*, No. 1:08cv677 (JCC), E.D. Va. 2/10/09; *Muniz v. Fairfax County Police Dept.*, 2005 WL 1838326, at *2 (E.D. Va. Aug. 2, 2005) (*citing Davis v. City of Portsmouth*, 579 F. Supp. 1205, 1210 (E.D. Va. 1983), aff'd 742 F.2d 1448 (4th Cir. 1984); *see also Mobley v. City of Chesapeake*, 2006 WL 4738661, at *3 (E.D. Va. Aug. 30, 2006); *Young v. City of Norfolk*, 62 Va. Cir. 307, 203 WL 21730724, at *2 (Va. Cir. Ct. July 7, 2003).

None of the state law claims can proceed against Prince William County or its Police Department, or against the Chief in his official or personal capacity, because none of these defendants are alleged to have committed intentional or reckless wrongs against plaintiffs, and none are alleged to have been personally involved in the alleged deprivation of rights. *Harrison* at *33, *37; *Russo v. White,* 400 S.E.2d 160, 162 (Va. 1991162; *McDonald v. Dunning*, 760 F. Supp. 1156, 1160 (E.D. Va. 1991).

For all these reasons, the Complaint should be dismissed against Police Chief

Deane, PWC and its Police Department.

### D. No cause of action is stated for intentional or negligent infliction of emotional distress.

No cause of action exists here for the state-law claims of intentional and/or

negligent infliction of emotional distress.  To succeed on such a claim in Virginia, a

plaintiff must allege, and then prove by clear and convincing evidence, that:  (1) "the

wrongdoer's conduct is intentional or reckless"; (2) "the conduct is outrageous and

intolerable"; (3) "the alleged wrongful conduct and emotional distress are causally

connected"; and (4) "the distress is severe." *Harrison* at *31; *Russo v. White*, 400 S.E.2d

160, 162 (Va. 1991); see *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007); *Womack v.

Eldridge*, 210 S.E.2d 145, 148 (Va. 1974).  The cause of action is generally disfavored.

*Almy*, 639 S.E.2d at 187.  "Liability has been found only where the conducted has been

so outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Harrison* at *32; *Russo*, 400 S.E.2d at 162 (quotation omitted).

Here, Sergeant Moore lawfully attempted to serve a warrant and Mrs. Guerrero

acted wrongfully in slamming the door on him.  All further actions followed from Mrs.

Guerrero's wrongful behavior.  Therefore, Mrs. Guerrero, and Mr. Guerrero in interfering

with her arrest, are responsible for what happened to the plaintiffs.  None of the injuries

to plaintiffs as reported on the ADC intake forms and photographs are serious or long-

lasting. *Exhibits D and E.*  As to the allegation of depression, Exhibit D shows this was a

pre-existing condition.  Under these circumstances, no cause of action for emotional

distress exists against the defendants.

**E. Sovereign Immunity and Contributory Negligence are complete defenses to the state law claims.**

Defendants submit that the state law doctrine of sovereign immunity, as well as plaintiffs' own contributory, willful and wanton negligence, are defenses to the state law claims. Under *Niese v. City of Alexandria*, 564 S.E.2d 127, 132-33 (Va. 2002), a municipality and its police department are immune from liability for the negligent acts or intentional torts of police officers under its employ that are committed during the performance of a governmental function. *Harrison* at *39; *Young v. City of Norfolk*, 62 Va. Cir. 307, 2003 WL 21730724, at *2 (Va. Cir. Ct. July 17, 2003). All acts alleged here occurred during the performance of police duties. Therefore, sovereign immunity bars plaintiffs' state law claims against Prince William County and its police department. Further, Chief Deane's only role in this matter was to implement policy, and under *Messina v. Burden*, sovereign immunity protects him from liability for negligence in the exercise of his judgment and discretion. *Harrison* at *41; *Messina v. Burden*, 321 S.E.2d 657 (1984); *Blackburn v. Town of Coeburn*, 2007 WL 1577506 at *3 (W.D. Va. June 1, 2007). Therefore, plaintiffs' tort claims against Prince William County, its police department and police chief should be dismissed.

Further, the defendant officers also have sovereign immunity from suit, because each meets the four-part *Messina v. Burden* test for such immunity. *Messina v. Burden*, 321 S.E.2d at 660-61 (1984). Each was engaged in an important governmental function in which the government was interested and exercised control. Each was exercising judgment and discretion in deciding how best to implement their duties of serving a warrant and conduct arrests. However, because there may be facts in dispute about their intent, defendants reserve this defense as to the individual officers at this time.

Mrs. Guerrero's intentional misconduct and willful and wanton negligence in slamming the door on Sergeant Moore and resisting arrest, and Mr. Guerrero's intentional misconduct and willful and wanton negligence in interfering with the arrest, are bars to tort recovery. Under Virginia law, contributory negligence generally bars recovery in tort, with the exception of situations where the defendant has committed an intentional tort or where the defendant is willfully and wantonly negligent. *Valladares v. Cordero*, No. 1:06cv1378 (JCC), USDC E.D. Va. (Aug. 20, 2007) at p. 14; *Williams v. Harrison*, 497 S.E.2d 467, 469 (Va. 1998); *Griffin v. Shively*, 315 S.E.2d 210 (Va. 1984). The defendant officers reserve this defense at this time because there may be facts in dispute about their intent.

### Conclusion

Plaintiffs' Complaint fails to state certain claims for which relief may be granted against all or most of the defendants and should be dismissed with prejudice pursuant to F.R.C.P. 12(b)(6). In the alternative, all of the defendants pray that this Court consider their Motion for Summary Judgment and dismiss the Complaint as to all defendants with prejudice pursuant to F.R.C.P. 56.

WHEREFORE, defendants pray that this Honorable Court grant their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment; dismiss plaintiffs' Complaint with prejudice; grant the defendants' attorneys' fees and costs; and for such other and further relief as is just and proper.

Respectfully submitted,

CHIEF CHARLIE T. DEANE,
SERGEANT DAVID MOORE,
OFFICER LUIS POTES,
OFFICER ADAM HURLEY,
DOES 1-6 AND ROES 1-5,
PRINCE WILLIAM COUNTY AND
PRINCE WILLIAM COUNTY POLICE
DEPARTMENT
By Counsel

ANGELA L. HORAN
County Attorney
_____/s/_____
M. Alice Rowan, VSB #27056
Assistant County Attorney
One County Complex Court
Prince William, VA  22192-9201
Phone:  (703) 792-6630
Fax:  (703) 792-6633
Email:  arowan@pwcgov.org
Attorneys for Defendants

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 14 day of December, 2009, I will electronically file the foregoing Memorandum of Points and Authorities with the Clerk of the Court using the CM/ECF system.  Service of the Memorandum will be made electronically and by U.S. Mail, first-class postage pre-paid, this date upon the following:

Robert H. Cox, Esquire VSB #33118
Yolanda Hawkins-Bautista, Esquire
Sonia W. Murphy, Esquire
Eduardo R. Ferrer, Esquire
Veronica N. Berger, Esquire
Chantel Lee, Esquire
Sasha Hodge-Wren, Esquire
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 783-0800
Telefacsimile:  (202) 383-6610
Email:  CoxR@howrey.com
Attorneys for Plaintiffs

Christina Guerola Sarchio, Esquire
Patton Boggs LLP
2550 M Street, N.W.
Washington, D.C.  20037-1350
Telephone:  (202) 457-7527
Telefacsimile:  (202) 457-6513
Email:  unknown
Attorneys for Plaintiffs


Cesar Perales, Esquire
Jackson Chin, Esquire
Foster Maer, Esquire
Diana Sen, Esquire
LATINOJUSTIC/PUERTO RICAN LEGAL
DEFENSE AND EDUCATION FUND (PRLDEF)
99 Hudson Street, 14th Floor
New York, N.Y.  10013
Telephone:  (212) 739-7575
Telefacsimile:  (212) 431-4276
Email:  unknown
Attorneys for Plaintiffs


                              Angela L. Horan
                              County Attorney
                                        /s/
                              _____
                              M. Alice Rowan, VSB #27056
                              Assistant County Attorney
                              One County Complex Court
                              Prince William, VA  22192-9201
                              Phone: (703) 792-6630
                              Fax: (703) 792-6633
                              Email:  arowan@pwcgov.org
                              Attorneys for Defendants


MAR: police / guerrero / memo of points and authorities in support of motion to dismiss msj