IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ESPERANZA GUERRERO, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Case No. 1:09-cv-1313 JCC/TRJ |
| | ) | |
| PRINCE WILLIAM COUNTY POLICE | ) | |
| CHIEF CHARLIE T. DEANE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>AFFIDAVIT OF SERGEANT DAVID MOORE</u>

I, SERGEANT DAVID MOORE, defendant in this matter, hereby DECLARE AND AFFIRM as follows:

1. I am a Police Sergeant employed by the Prince William County Police Department since Spring of 1989. I have personal knowledge of the matters set forth herein. I am over eighteen years of age and competent to testify.

2. On Saturday, November 24, 2007, at approximately 11:28 a.m., I was working the 7:00 a.m. to 12 noon shift. I wore my blue, police-issued uniform with the police badge on the front of my shirt, and I drove a County-issued, marked police car. I wore my handcuffs in front of me and my police radio on my left side. My duties that day included serving warrants.

3. I had one remaining warrant to serve that day. I had the cover sheet and warrant with me, and it is attached hereto as "Exhibit A." It shows the warrant was to be served on a female named Antonia Mungia with address of ████████ Manassas, VA. The cover sheet also shows that service had been attempted previously on October 27, 2007 but no one answered the door at that time, although "subject [was seen] looking out window" and a form was left at the house concerning the warrant. The

court date had passed without Ms. Mungia appearing, so I intended to inform her when I

served the warrant that the court date would be re-set. Based on the information shown

on the cover sheet and warrant, I had a reasonable belief that the subject, Ms. Mungia,

lived at that address and could be found there, and may be attempting to evade service.

4. I knocked on the door of the address shown on the warrant, and a woman later

identified as Esperanza Guerrero answered. When she opened the door, I asked for

Antonia Munguia. I told her why I was there and who I was there for. I asked Mrs.

Guerrero if Ms. Mungia lived there and Mrs. Guerrero replied "yes." Mrs. Guerrero said

that Ms. Mungia was not there right now. Then she said, "you can give me a card, and I

will have her call you."

5. When Mrs. Guerrero opened the door, she was standing in a narrow foyer area

with stairs going up behind her. To her left, there was a half wall opening to the upper

level. Mrs. Guerrero kept the door partly closed, so I couldn't see what was going on in

the house beyond the foyer. I could hear people inside the house but, because the door

was only partly open, I could not hear them well. I was standing outside the front door

on a narrow concrete stoop with steps behind me.

6. Mrs. Guerrero asked me for more information about the warrant and at that

point she seemed calm and interested in what I was telling her. Some of the information

was personal to the subject of the warrant and I did not provide that information to her,

but I explained why I was there. I intended to pull out my business card to give to her.

7. As I spoke to Mrs. Guerrero, she glanced off to her left side. I could not tell

what she was looking at. She took a step backward into the foyer of her home. I took a

step forward so that I could continue with what I was telling her, and give her my

business card. I went no further than the door frame of the front door. I continued to

2

hear other people inside the residence but from where I stood, I couldn't see anyone else. Based on my experience in serving warrants, this was a dangerous position for me to be in because the subject of the warrant may have been waiting out of sight, gesturing for Mrs. Guerrero not to reveal her, or may even have a gun or be ready to attack me. I stood in the doorway between the door frame, intending to look about to see if someone who could be Ms. Mungia was present.

8. At this time I was thinking Ms. Mungia was there, but that Mrs. Guerrero was hiding this fact by was telling me she was not there. Mrs. Guerrero was saying, "what do you want her for?" I told Mrs. Guerrero that I did not intend to make a physical arrest of Ms. Mungia at that time, but I just wanted to get Ms. Mungia's identification and hand her the summons and fill out the paperwork. I told Mrs. Guerrero this because, based on my experience with serving warrants of this type, the subject of the warrant may be listening out of sight, and if they hear that I intend to give them the summons but not take them away, normally the subject will come out and identify herself and take the summons. The person answering the door will then say, "Oh, I didn't know you were here!" In my experience, the subject of a warrant wants to know why I'm there. In this case, I thought Ms. Mungia probably was in there, but Mrs. Guerrero didn't want to tell me she was in there.

9. While I was talking to her, Mrs. Guerrero stepped back and opened the door further, as if she wanted someone to hear, as if she wanted people inside the home to hear what was going on. It was as if she was saying that Ms. Munguia was not home, but glancing to the left as if wanting someone else to hear what was going on. I was thinking maybe Ms. Mungia is right here and could hear what is going on. I have had occasions to serve warrants when someone has been there, but didn't know what I wanted, and did not come forward, and then when they found out why I was there, they came forward. I thought that might be happening this time. My intent at that time was not to physically

3

arrest Ms. Munguia, but to get her identification and hand her the summons and have her accept it.

10. As I was talking to her, Mrs. Guerrero backed up into the foyer and opened the door wider, seeming to invite me in. I took a step forward to continue talking to her and to give her my card. I did not come all the way inside, just right inside the door frame. If I had had the chance, I would have looked around to see if Ms. Mungia was present.

11. Suddenly, without any warning, Mrs. Guerrero charged forward and slammed her left forearm and hand against my chest, shoving me backward onto the stoop toward the concrete steps outside. She then began to slam the door closed on my side and screamed loudly at me. At that point I believed in good faith there was probable cause that a crime was being committed; that is, Mrs. Guerrero had assaulted and battered a police officer when she hit and shoved me. I told her at least twice to stop touching me, and she screamed, "You're in my house!" and continued to push me with her left arm.

12. I told her she was under arrest for assault and battery. She continued to push me and shouted "I'm not under arrest!" I pulled out my handcuffs and placed a cuff on her left wrist but I was unable to tighten it because Mrs. Guerrero wrenched her left wrist free and tried to back up into the house. She continued to try to slam the door closed on my leg and foot. She continued to push against the door and would not comply with my requests that she stop.

13. I took out my police radio and called for additional police units to help me. I later learned that the dispatcher was so alarmed at the noises heard on the radio that the dispatcher assumed I was in bad trouble, and dispatched my call for assistance as a "Signal One," which is the highest priority call for assistance when an officer is in trouble and officers from all over the County respond to help. When I realized the call had been dispatched as a Signal One and there were many officers rushing to help, I called dispatch back. I thought I could keep the situation at bay until other officers arrived, so I advised

4

dispatch that only three police cars from the west end of the County needed to respond and they could respond in normal mode. I did not think I needed every available officer on both the west and east ends of the County to respond because at that point I thought I could maintain the situation with the one woman pushing on the door against my leg, although I heard other voices inside and did not want to enter to make the arrest without police backup. Mrs. Guerrero continued to scream and push on the door against me. The Communications records are attached hereto as "Exhibit B."

14. Officers Potes, Caplan and Hurley arrived and I told them I intended to arrest the woman on the other side of the door for assault and battery on a law enforcement officer. They saw the door being pushed closed on my leg. The other officers and I pushed the door open and I attempted to arrest Mrs. Guerrero. She fought and struggled and screamed in the narrow foyer entrance. She grabbed onto the banister and would not let go, and lowered herself to the floor to evade arrest. I thought I could get her handcuffed so I told the other officers not to use pepper spray on her, and eventually with the assistance of another officer, we were able to free her grip from the banister and I handcuffed her.

15. Other people were running around the residence, all shouting and appearing upset. Officer Potes shouted at them in English and Spanish to keep back, but they advanced and a man tried to grab Mrs. Guerrero or grab at me. Officer Potes used pepper spray on the man and he retreated, and was later arrested. This man was later identified as Juan Guerrero.

16. We walked Mr. and Mrs. Guerrero outside and called Fire and Rescue, and they treated the man's eyes by rinsing them out with water. I do not remember if I told a female officer to tighten the handcuffs, but if I did, this would have happened outside the police car because it is very difficult to reach handcuffs inside a car. Also, I had no intention that the handcuffs be tightened any more than necessary to secure Mrs. Guerrero's hands and keep her from wrenching them free again. When she was walking

outside, Mrs. Guerrero yelled at me, "You fucking black people!" and "You cops think we are ignorant!"

17.  I did not take Mrs. Guerrero to the police station. I took Mrs. Guerrero to the Prince William-Manassas Regional Adult Detention Center ("ADC") for further processing. The Police Incident Information records are attached as "Exhibit C" and the ADC records are attached as "Exhibit D." I do not remember telling Mrs. Guerrero to lean back in the police car, but if I did so, it was because I could not unbuckle her seatbelt and get her out of the police car if she was leaning forward. I did not intend to hurt her hands or arms and, while handcuffs can be uncomfortable to anyone, I did not do anything to make them more uncomfortable than necessary. She did not appear to be seriously hurt and said nothing that made me think she was seriously hurt. If there were red marks or bruises on her wrists or arms, they would have resulted from her wrenching her left wrist out of the handcuff and fighting the officers who were trying to release her grip on the banister.

18.  Mrs. Guerrero was charged with Resisting Arrest/Obstruction of Justice and Assault and Battery on a Law Enforcement Officer. The Magistrate held her on no bond. Her booking statement indicates the only injuries reported were bruised right forearm and left elbow. Photographs taken of her arms that day at the ADC are attached as "Exhibit E."

19.  Based upon my observations under all the circumstances, I believed in good faith there was probable cause that one or more crimes were being committed when Mrs. Guerrero struck and pushed me; refused to stop pushing me; refused to submit to arrest; pulled her hand out of the handcuff; and pushed the door closed on my leg and foot; and

when Mr. Guerrero rushed down the steps and grabbed at us.  At all times relevant to this incident I acted in the good faith belief that I used only the force that was necessary to prevent Mrs. Guerrero from harming me and to effect her arrest; and to prevent further harm to anyone present.

I certify and affirm that the matters set forth above are true and correct to the best of my knowledge and belief.

_____
SERGEANT DAVID MOORE


## NOTARY CERTIFICATE

County of Prince William; Commonwealth of Virginia;

I hereby certify that DAVID MOORE appeared and acknowledged the foregoing AFFIDAVIT before me this _11th_ day of _December_____, 200_9_.


_Nancy T. O'Drince_____
Notary Public

My commission expires: _6/30/2011_____


MAR: police / guerrero / affidavit of moore

