**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| ESPERANZA GUERRERO, *et al.,*     ) | |
|       ) | |
|     Plaintiffs     ) | |
|       ) | |
|       ) | |
| v.     ) | Civil Action No. 1:09-cv-1313 (JCC/TRJ) |
|       ) | |
|       ) | |
| PRINCE WILLIAM COUNTY     ) | |
| POLICE CHIEF CHARLIE T. DEANE,     ) | |
| *et al.,*     ) | |
|       ) | |
|     Defendants.     ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ...................................................................................1

II.   STANDARD OF REVIEW .......................................................................................2

III.  ARGUMENT............................................................................................................4

    A.   Each of Plaintiffs' Causes of Action States a Claim Upon Which Relief
       May Be Granted.............................................................................................4

           1.   Plaintiffs Have Sufficiently Stated a Claim for Unreasonable
               Search and Seizure, False Arrest, and False Imprisonment........................4

                  a.   Defendant Moore Did Not Have a "Legal Right" to Enter
                      the Guerrero Home ........................................................................5

                  b.   Absent a Legal Right to Enter the Home, Defendants
                      Lacked Probable Cause to Arrest and, Even If They Had
                      Probable Cause, No Exigent Circumstances Existed......................7

                      i.   No Probable Cause...............................................................7

                      ii.  No Exigent Circumstances....................................................8

                  c.   The Subsequent False Imprisonment and Arrest of Mr. and
                        Mrs. Guerrero Were Improper .......................................................9

            2.   Plaintiffs Have Sufficiently Stated a Claim for Excessive Force
               and Assault and Battery .............................................................................10

                    a.   Defendants Used Excessive Force When They Detained
                        and Arrested Mr. and Mrs. Guerrero After Entering Their
                        Home Without a Warrant...............................................................10

                        i.   Defendants Used Excessive Force Against Mrs.
                        Guerrero ............................................................................11

                        ii.  Defendants Used Excessive Force Against Mr.
                        Guerrero ............................................................................12

                    b.   Defendants Committed Assault and Battery on Juan and
                        Mrs. Guerrero When They Detained and Arrested Them
                      After Entering Their Home Without a Warrant.............................13

            3.   Plaintiffs Have Sufficiently Stated a Claim for Intentional and
               Negligent Infliction of Emotional Distress ...............................................14

B. Defendants Assertions of Contributory Negligence are Untenable ......................15

C. Defendants are Not Entitled to Qualified or Sovereign Immunity ........................16

  1. Qualified Immunity ........................................................................16

    a. Right to be Free from Unlawful Search and Seizures (First Cause of Action) ...............................................................17

    b. Right to be Free from Excessive Force (Second Cause of Action) .................................................................................17

  2. Sovereign Immunity ........................................................................18

D. Prince William County and the Prince William County Police Department Are Properly Named Defendants .........................................................19

  1. Defendants Created the Policies and Customs that were the Catalyst for Defendant Officers' Actions ..................................19

  2. Defendant PWCPD Failed to Adequately Supervise Subordinates ...........20

IV. CONCLUSION ........................................................................................21

## TABLE OF AUTHORITIES

### CASES

*Alexis v. McDonald's Restaurant of Mass., Inc.*,
　　67 F.3d 341 (1st Cir. 1995) .................................................................................18

*Almy v. Grisham*,
　　639 S.E.2d 182 (Va. 2007) ..................................................................................14

*Carter v. Baltimore County, et al.*,
　　No. 01-2242, 2002 U.S. App. LEXIS 14452 (4th Cir. July 17, 2002) .......................2

*Chaloux v. Killeen*,
　　886 F.2d 247 (9th Cir. 1989) ...........................................................................19, 20

*Chao v. Rivendell Woods, Inc.*,
　　415 F.3d 342 (4th Cir. 2005) ................................................................................2

*Chew v. Gates*
　　27 F.3d 1432 (9th Cir. 1994).............................................................................19

*Davis v. Zahradinick*,
　　600 F.2d 458 (4th Cir. 1979) ................................................................................3

*Edwards v. City of Goldsboro*,
　　178 F.3d 231 (4th Cir. 1999) ................................................................................2

*Elder v. Holland*,
　　208 Va. 15 (1967) ..............................................................................................18

*Ensko v. Howard County, MD.*,
　　423 F. Supp. 2d 502 (D. Md. 2006) .....................................................................20

*Estate of Harvey v. Roanoke City Sheriff's Office*,
　　Civ. No. 7:06CV00603, 2007 U.S. Dist. LEXIS 12614 (E.D. Va. 2007) .................20

*Fisher v. Washington Metropolitan Area Transit Authority*,
　　690 F.2d 1133 (4th Cir. 1982) ............................................................................19

*Frazier v. City of Norfolk*,
　　236 F.R.D. 273 (E.D. Va. 2006) ......................................................................19, 20

*GE Investment Private Placement Partners II v. Parker*,
　　247 F.3d 543 (4th Cir. 2001) ................................................................................2

*Gay v. Wall,*
    761 F.2d 175 (4th Cir. 1985) ................................................................3

*Gerstein v. Pugh,*
    420 U.S. 103 (1975)........................................................................7

*Glasco v. Ballard,*
    452 S.E.2d 854 (Va. 1995)..............................................................16

*Graham v. Connor,*
    490 U.S. 386 (1989)..............................................................10, 17

*Griffin v. Shively,*
    315 S.E.2d 210 (Va. 1984)..............................................................16

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)........................................................................17

*Harrison v. Prince William County Police Department,*
    640 F. Supp. 2d 688 (E.D. Va. 2009) ........................................2, 11, 12

*ICore Networks, Inc. v. McQuade Brennan LLP,*
    No. 1:08cv748, 2009 U.S. Dist. LEXIS 147 (E.D. Va. Jan. 5, 2009)...................3, 7

*James v. Jane,*
    221 Va. 43 (1980) ..........................................................................18

*Jones v. Buchanan,*
    325 F.3d 520 (4th Cir. 2003) ..................................................11, 12, 18

*Kress v. Musgrove,*
    149 S.E. 453 (Va. 1929)....................................................................9

*Kuklane v. Whittington,*
    No. 93- 1843, 1994 U.S. App. LEXIS 29061 (4th Cir. 1994) .................4, 5, 8

*Meeker v. Edmundson,*
    415 F.3d 317 (4th Cir. 2005) ..........................................................17

*Montgomery Ward & Co. v. Freeman,*
    199 F.2d 720 (4th Cir. 1952) ............................................................9

*Montgomery Ward & Co. v. Wickline,*
    50 S.E.2d 387 (Va. 1948)..................................................................9

*Mylan Laboratories, Inc. v. Matkari,*
    7 F.3d 1130 (4th Cir. 1993) ..................................................................7, 12

*Paramont Mining Corp. v. NLRB,*
    631 F.2d 346 (4th Cir. 1980) ......................................................................13

*Park v. Shiflett,*
    250 F.3d 843 (4th Cir. 2001) ..................................................11, 12, 13, 17

*Payton v. New York,*
    445 U.S. 573 (1980)..................................................................1, 4, 5, 6, 7

*Pritchett v. Alford,*
    973 F.2d 307 (4th Cir. 1992) .......................................................................7

*Rogers v. Pendleton,*
    249 F.3d 279 (4th Cir. 2001) ......................................................................7

*Samuel v. Rose's Stores,*
    907 F. Supp. 159 (E.D. Va. 1995) .............................................................9

*Schoeneman v. Fairfax County,*
    37 Va. Cir. 17 (Va. Cir. Ct. 1995)............................................................16

*Shaw v. Stroud,*
    13 F.3d 791 (4th Cir. 1994) ......................................................................20

*Shiflett v. GE Fanuc Automation Corp.,*
    Civ. No. 95-0073-C, 1996 U.S. Dist. LEXIS 14306 (W.D. Va. July 23, 1996)................14, 15

*Smith v. Tolley,*
    960 F. Supp. 977 (1997) .............................................................................5

*Stith v. Commonwealth,*
    Rec. No. 1210-00-2, 2001 Va. App. LEXIS 245 (Va. Ct. App. May 8, 2001).......................13

*Strutz v. Hall, et al.,*
    308 F. Supp. 2d 767 (E.D. Mich. 2004)...........................................7, 8, 10

*U.S. v. Campbell,*
    945 F.2d 713 (1991)................................................................................5, 8, 9

*U.S. v. Johnson,*
    No. 99-4751, 2001 U.S. App. LEXIS 2324 (4th Cir. 2001) ......................5

*U.S. v. Leon,*
    468 U.S. 897 (1984)....................................................................................................5

*U.S. v. Rohrig,*
    98 F.3d 1506 (6th Cir. 1996) ...................................................................................8

*Valladares v. Cordero,*
    Civ.1:06cv1378 (JCC), 2007 U.S. Dist. LEXIS 63273 (E.D. Va. Aug. 27, 2007)......11, 12, 16

*W. T. Grant Co. v. Owens,*
    141 S.E. 860 (Va. 1928)...........................................................................................9

*Watkins v. City of Oakland, California,*
    145 F.3d 1087 (9th Cir. 1998) ...............................................................................19

*Welsh v. Wisconsin,*
    466 U.S. 740 (1984).......................................................................................5, 7, 8

*Witcher v. Reid,*
    70 Va. Cir. 415 (Va. Cir. Ct. 2006)......................................................................16

*Womack v. Eldridge,*
    210 S.E.2d 145 (1974) ............................................................................................14

*Zayre of Va., Inc. v. Gowdy,*
    147 S.E.2d 710 (Va. 1966).......................................................................................9

## STATUTES

42 U.S.C. § 1983.........................................................................................................20

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 3

Fed. R. Civ. P. 56........................................................................................................2

U.S. Const., Amend. IV .......................................................................................4, 17

Va. Code Ann. § 22.1-279.3 (2009).........................................................................5

# I.   PRELIMINARY STATEMENT

There are few places in the world as sacred as one's own home. Mainstream society overwhelmingly recognizes that there is no place like home. Indeed, the United States Supreme Court has acknowledged the sanctity of each individual's home. *See Payton v. New York*, 445 U.S. 573, 585-586 (1980). On November 24, 2007, however, the home of Juan and Esperanza Guerrero was invaded by Prince William County police officers, ironically, with absolutely no regard for the law. Without justification, these officers -- whom the citizens of Prince William County trust and rely upon for their protection -- forced their way into the Guerrero home, pepper sprayed Mr. Guerrero in the face, forcibly arrested Mr. and Mrs. Guerrero in front of their children and Mrs. Guerrero's elderly mother, and made a public spectacle of the family to the entire neighborhood. Notably, this series of events began with a police officer's attempted service of a civil truancy summons. No reasonable explanation exists for why what should have been a brief, uneventful police contact turned into a nightmare of horrors for the Guerrero family; indeed, a Prince William County General District Court Judge agreed when she deemed the police officers' actions as "unlawful."

The tension between the Latino community and the police department in Prince William County has been growing since the County took upon itself to be a regulator and enforcer of the perceived immigration "problem" in this community.[1] The unfortunate incident which gives rise to the Plaintiffs' Complaint, combined with the disputed factual allegations set forth in the Defendants' moving papers, serves to drive a further wedge between the Latino community and the police by condoning as "justified" the unlawful mistreatment of a Latino family. As set forth

---

[1] On July 10, 2007, the Prince William County Board of Supervisors passed the well-known Resolution 07-609 (later modified by Resolution 08-500) which seeks to impede upon the federal government's authority by empowering local police officers and county employees to inquire into the immigration status of individuals in their community. (Compl. ¶ 16.) In order to effectuate the policies proscribed in the Resolution, the County directed the Prince William County Police Department and Chief of Police Charlie Deane to promulgate police standards and protocol in line with the Resolution. (Compl. ¶ 17.)

in further detail below, Plaintiffs have stated a claim for relief with respect to each count alleged in the Complaint, and the Court should accordingly deny Defendants' motion to dismiss the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.

## II.        STANDARD OF REVIEW

A complaint meets the Federal Rules of Civil Procedure's liberal pleading standards if, "in light of the nature of the action, the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis." *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 348 (4th Cir. 2005); *Harrison v. Prince William County Police Dept.*, 640 F. Supp. 2d 688, 698 (E.D. Va. 2009). When considering a motion to dismiss made pursuant to Rule 12(b)(6), "a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff." *Carter v. Baltimore County, et al.*, No. 01-2242, 2002 U.S. App. LEXIS 14452, at **7 (4th Cir. July 17, 2002) (quoting *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001)). Further, "a complaint should not be dismissed as failing to state a claim 'unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* Notably, "where the motion to dismiss involves 'a civil rights complaint, [the court] must be especially solicitous of the wrongs alleged and must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

In addition, when a defendant alleges "matters outside the pleading," a court may, in its discretion, convert a Rule 12(b)(6) motion to a motion for summary judgment. *Harrison*, 640 F. Supp. 2d at 699 (quoting Fed. R. Civ. P. 12(b)); *see also Carter*, 2002 U.S. App. LEXIS 14452 at **7. When so acting, however, a court must give all parties a "reasonable opportunity to present all material made pertinent to such motion." *Id.* (quoting Fed. R. Civ. P. 12(b)); *see also*

*Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (reversing the decision of the lower court because the motion for summary judgment was granted when "plaintiff had barely begun discovery.") Moreover, when a reasonable opportunity for discovery has not been afforded, the district court's treatment of the motion to dismiss as a motion for summary judgment is "wholly inappropriate." *Gay*, 761 F.2d at 177-78.

As discussed in further detail below, Plaintiffs have alleged sufficient facts in their Complaint "to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). As evident from Defendants' submission, Defendants are more than sufficiently informed of each claim's general basis. Moreover, in light of the civil rights allegations set forth in Plaintiffs' Complaint, Defendants have not and cannot meet the heightened burden of showing that Plaintiffs are not entitled to relief under any legal theory which might be suggested by the facts alleged in the Complaint. Viewing the facts in the light most favorable to the Plaintiffs, Defendants' motion to dismiss should undoubtedly be denied.

With respect to Defendants' motion in the alternative for summary judgment, while Defendants have attached certain affidavits and documentation concerning the November 2007 incident to their submission, Defendants fail to make mention of the January 25, 2008 preliminary hearing at which the Honorable Wenda Travers of the General District Court of Prince William County found the police officers' entry to be "unlawful." (Compl. ¶ 49); *see also* Ex. A at 84 (Jan. 25, 2008 Preliminary Hearing Transcript)). Under these circumstances, consideration of a motion for summary judgment is premature, and discovery should commence to allow for the full development of the relevant factual disputes. *See ICore Networks, Inc. v. McQuade Brennan LLP*, No. 1:08cv748, 2009 U.S. Dist. LEXIS 147 at *16 (E.D. Va. Jan. 5, 2009) (holding that when affidavits have conflicting versions of the facts, summary judgment is not appropriate (citing *Davis v. Zahradinick*, 600 F.2d 458, 460 (4th Cir. 1979) ("[S]ummary judgment ... may not be invoked where ...the affidavits present conflicting versions of the facts which require credibility determinations.")).

### III.      ARGUMENT

Plaintiffs have alleged the police officers' actions in entering the home, using physical force to restrain the Guerrero family, and then arresting and charging Mr. and Mrs. Guerrero give rise to the following causes of action: (i) violation of the Fourth Amendment – unreasonable searches and seizures; (ii) violation of the Fourth Amendment – excessive force; (iii) assault; (iv) battery; (v) false arrest and imprisonment; (vi) intentional infliction of emotional distress; and (vii) negligent infliction of emotional distress.  (Compl. ¶¶ 56-84.)

### A.      Each of Plaintiffs' Causes of Action States a Claim Upon Which Relief May Be Granted

#### 1.      Plaintiffs Have Sufficiently Stated a Claim for Unreasonable Search and Seizure, False Arrest, and False Imprisonment

Defendants recite a litany of excuses as to why the police officers' entry into the Guerrero home was lawful.  For example, they contend that Defendant Moore had "reason to believe that Ms. Munguia was home but attempting to evade service" due to the warrant cover sheet, the noises in the home, Mrs. Guerrero's glancing to the side, and Defendant Moore's alleged experience in serving warrants.  (Def. Mem. at 5-7.)  Moreover, they allege that Mrs. Guerrero pushed Defendant Moore and slammed the door on him, giving the responding police officers probable cause to arrest her in her own home.  (*Id.* at 13.)   While creative, these arguments are not rooted in Fourth Amendment jurisprudence.

The Fourth Amendment mandates that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const., Amend. IV.  The home is particularly sanctimonious.  Indeed, it is a basic principle of Fourth Amendment law that searches and seizures *inside a home* and without a warrant are presumptively unreasonable.  *Payton,* 445 U.S. at 586.  "[T]he physical entry of the home is the *chief evil* against which the wording of the Fourth Amendment is directed."  *Id* at 585-86 (emphasis added).  Moreover, "[t]he government bears the burden of overcoming the presumption of unreasonableness of warrantless searches."  *Kuklane v. Whittington*, No. 93-

1843, 1994 U.S. App. LEXIS 29061 at *4 (4th Cir. 1994) (unpubl.) (*citing Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984)).

### a.   Defendant Moore Did Not Have a "Legal Right" to Enter the Guerrero Home

Defendants contend that "Sergeant Moore had a legal right to enter the home to execute the warrant." (Def. Mem. at 13.)  They cite no case law supporting the novel concept that a civil truancy summons confers police with a legal right to enter a home absent the homeowner's consent.  Instead, Defendants cite several inapposite cases that address a police officer's ability to enter a home and execute either an ***arrest*** or ***search*** warrant.  *See e.g., Smith v. Tolley*, 960 F. Supp. 977, 981-82 (1997) (officers attempted to execute an arrest warrant); *Payton*, 445 U.S. at 603 (discussing the implicit authority of an arrest warrant); *U.S. v. Johnson*, No. 99-4751, 2001 U.S. App. LEXIS 2324 at *1 (4th Cir. 2001) (unpubl.) (officers attempted to execute a search warrant); *U.S. v. Leon*, 468 U.S. 897, 900 (1984) (same).  Here, Defendant Moore did not have an arrest or search warrant.  Instead, he simply had a truancy summons -- governed by ***civil*** provision § 22.1-279.3 -- which did not give Defendant Moore any legal right to enter the Guerrero home.  *See* Va. Code Ann. § 22.1-279.3 (2009) (attached as Ex. C).

Even more troubling, Defendants have attempted to deceive this Court by mischaracterizing the language in *Payton*.  Defendants cite the case as standing for the proposition that "a warrant issued by a court 'implicitly carr[ies] with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within[.]"  (Def. Mem. at 13.)  However, the language in *Payton* is much narrower: "[A]n ***arrest warrant*** founded on ***probable cause*** implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  445 U.S. at 603 (emphasis added).  Because Defendant Moore did not have an arrest warrant authorizing him to enter the Guerrero home, the Fourth Amendment presumes that an entry such as the one conducted here is unreasonable.  *See U.S. v. Campbell*, 945 F.2d 713, 715 (1991)

("Warrantless entries into a residence are presumptively unreasonable."). Defendants have not overcome that presumption.

Furthermore, Defendants argue that "Plaintiffs' search and seizure/false arrest/false imprisonment claims turn on whether Defendant Moore had a reasonable belief that the warrant subject, Ms. Munguia, lived at the residence, and a reasonable belief that she was home." (Def. Mem. at 12.) This argument -- again cited with no legal support -- also runs afoul of the Fourth Amendment. The moment Plaintiff Mrs. Guerrero attempted to close the door (Compl. ¶¶ 24-25), Defendant Moore was required to leave, *even if he believed Antonia Munguia was present*. *Payton*, 445 U.S. at 583-90. The Honorable Wenda Travers said it best at the preliminary hearing in Mrs. Guerrero's subsequent assault and battery case:

> You don't have to enter the home to leave a card. You know, she said leave the card, and obviously, she wasn't going to be cooperative, *but she doesn't have to*. So if she says leave the card, you leave the card. This isn't a question of, you know, exigent circumstances. It's a truancy warrant from all the evidence I heard today. It's some sort of truancy thing. It's a summons. It's a summons. He wasn't even going to arrest her. How many times have we seen them leave their number and say, you know, come down to the station and sign the papers. . . . *Maybe the lady was there, but that really doesn't matter*. I certainly don't think it matters.

(*See* Ex. A at 82-83 (emphasis added).)

Defendants cannot dispute that Defendant Moore went to the Guerrero home to serve a *civil truancy summons* on Antonia Munguia. Nor can they dispute that Defendants Moore, Potes, Hurley and Caplan forced their way inside the house and arrested Mr. and Mrs. Guerrero *in their own home*. (Compl. ¶¶ 31-36.) Indeed, Defendants cannot and have not tried to dispute that even after barging into the Guerrero home and arresting Mr. and Mrs. Guerrero, Antonia Munguia was **not** found to be at the Guerrero home on that day. Because the Defendant police officers entered the Guerrero home without an arrest or search warrant, and because they arrested Mr. and Mrs. Guerrero in their home without a proper warrant, Defendant officers' actions were

presumptively unreasonable absent probable cause and exigent circumstances, neither of which existed here. *Welsh*, 466 U.S. at 748-49; *Payton*, 445 U.S. at 583-90.

**b.      Absent a Legal Right to Enter the Home, Defendants Lacked Probable Cause to Arrest and, Even If They Had Probable Cause, No Exigent Circumstances Existed**

The Defendant police officers' entry into the Guerrero home was unreasonable absent probable cause and exigent circumstances. *Payton*, 445 U.S. at 583-90; *Strutz*, 308 F. Supp. 2d at 781.

**i.      No Probable Cause**

"Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotations omitted)).  The existence of probable cause turns on two factors: (1) "the suspect's conduct as known to the officer" and (2) "the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992).  A police officer lacks probable cause to arrest an individual who is resisting an unlawful seizure. *Strutz v. Hall, et al.*, 308 F. Supp. 2d 767, 786-87 (E.D. Mich. 2004)  ("[I]f Defendants lacked a lawful basis to enter Plaintiffs' home without a warrant, if [sic] follows that they would have lacked probable cause to arrest [Plaintiffs] for the offense of resisting and obstructing an officer.").

Defendants claim that Mrs. Guerrero "suddenly" "charged forward" and "slammed" her arm and hand on Defendant Moore, and then "began to slam" the door on him. (Def. Mem. at 8.) At a minimum, this creates a factual dispute to be resolved at trial.[2]  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Nevertheless, viewing the facts in the light most

---

[2] Moreover, given that the facts are in such heavy dispute, summary judgment is also inappropriate. *See ICore*, 2009 U.S. Dist. LEXIS 147; *see also* Section II, *supra*.

favorable to Plaintiffs, no reasonable police officer could believe that probable cause existed to arrest Mrs. Guerrero.

### ii.    No Exigent Circumstances

Probable cause alone does not justify a warrantless arrest; instead, exigent circumstances must also exist, particularly when entering a home. *Welsh*, 466 U.S. at 753; *See Strutz*, 308 F. Supp. at 781 ("The additional authority conferred by statute when an offense is committed in an officer's presence is the power to make a warrantless ***arrest*** -- it is ***not*** the wholly distinct power to ***enter a private home*** without a warrant, whether to effect an arrest or for some other purpose") (emphasis in original).

Courts traditionally recognize four categories of exigent circumstances: "(i) hot pursuit of a fleeing felon, (ii) imminent destruction of evidence, (iii) the need to prevent a suspect's escape, and (iv) a risk of danger to the police and others." *Strutz*, 308 F. Supp. 2d at 776 (citing *U.S. v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996)). The Fourth Circuit has explained that "exigent circumstances" exist when "there is insufficient time to obtain a warrant." *Campbell*, 945 F.2d at 715. Furthermore, "[T]he Supreme Court has held that, hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor." *Kuklane*, 1994 U.S. App. LEXIS 29061 at *4 (quoting *Welsh*, 466 U.S. at 750 (internal quotations omitted)). *See also Kuklane*, 1994 U.S. App. LEXIS 29061 at **4-5 (finding a warrantless entry and arrest unconstitutional where police entered the plaintiff's home without consent and in response to a noise violation call, which is a misdemeanor crime); *see generally Strutz*, 308 F. Supp. 2d at 767 (finding a warrantless entry and arrest unconstitutional where police went to plaintiffs' home regarding reports of a loud party and underage drinking).

Defendants cannot dispute that the underlying infraction which brought Defendant Moore to the house -- serving a civil truancy summons -- was minor in nature. Furthermore, even assuming *arguendo* that the underlying offense which brought Defendants Potes, Hurley and

Caplan to the home was Mrs. Guerreros' alleged assault and battery on Defendant Moore, (Def. Mem. at 8), the fact remains that no exigent circumstances existed. Defendants argue that Defendant Moore and the responding officers believed "Moore was under attack" because his foot was allegedly caught in the door and Mrs. Guerrero attempted to close the door. (*Id.* at 13.) They also allegedly "saw Mr. Guerrero coming down the stairs and grabbing at them." (*Id.*) Putting aside for a moment that these facts are heavily disputed, Defendants have not offered any egregious conduct that would have prevented them from leaving the house and returning with an arrest warrant if appropriate. *Campbell*, 945 F.2d at 715. Indeed, Mrs. Guerrero was attempting to shut Defendant Moore ***out*** of the house, negating any argument that Defendant Moore was in any danger. (Def. Mem. at 8; Compl. ¶¶ 30-31.) Quite simply, nothing prevented the officers from securing an arrest warrant if they believed a crime was being committed, and exigent circumstances did not exist for Mr. and Mrs. Guerrero's arrest.

### c. The Subsequent False Imprisonment and Arrest of Mr. and Mrs. Guerrero Were Improper

Finally, Defendants argue -- without analysis -- that Plaintiffs "false arrest/false imprisonment claims should be dismissed." (Def. Mem. at 15.) Under Virginia common law, it is unlawful to restrain an individual's liberty without sufficient legal excuse. *See Montgomery Ward & Co. v. Freeman*, 199 F.2d 720, 723 (4th Cir. 1952) (citing *W. T. Grant Co. v. Owens*, 141 S.E. 860, 865 (Va. 1928) ("any restraint by fear or force upon the action of another is unlawful, and constitutes false imprisonment unless a showing of justification makes it a true or legal imprisonment").[3] Furthermore, a false arrest and false imprisonment claim is appropriate

---

[3] In *Samuel v. Rose's Stores*, 907 F. Supp. 159, 164 (E.D. Va. 1995) the court defined false imprisonment stating, "False imprisonment is restraint of one's liberty without any sufficient cause therefor [sic]." *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966). "The person need not be confined in a jail or placed in custody." *Id.*; *Kress v. Musgrove*, 149 S.E. 453, 455 (Va. 1929). "The plaintiff makes out a case for compensatory damages when he shows that he has been illegally detained without lawful process." *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 389 (Va. 1948). "[I]t is enough that the person be placed in reasonable apprehension that unless he willingly submits, force will be used." *Zayre*, 147 S.E.2d at 713. "If he does so submit to the extent that he is denied freedom of action, this restraint constitutes false imprisonment." *Id.* "It is not necessary to show malice, ill will or the slightest wrongful

where the police arrest an individual pursuant to an unlawful search and seizure. *Strutz*, 308 F. Supp. 2d at 786-87 (denying defendants' motion for summary judgment on plaintiffs' state law false imprisonment and false arrest claims following illegal home entry).

Plaintiffs have alleged facts demonstrating that: (1) Defendants Moore, Potes, Hurley and Caplan entered the Guerrero home without an arrest or search warrant; and (2) the Defendant Officers arrested and imprisoned Mr. and Mrs. Guerrero following the unlawful entry. (Compl. ¶¶ 30-35.) Defendant Moore falsely imprisoned Mrs. Guerrero when he held her to the ground in her own home despite the fact that the police had no lawful basis to enter her home. (*Id.* ¶ 31.) Moreover, Defendants Moore, Potes, Caplan and ROE falsely arrested Mrs. Guerrero when they arrested her, handcuffed her, and detained her at the station for several days following their warrantless entry into the Guerrero home. (*Id.* ¶ 39-47.) Defendants Moore, Potes, Hurley, Caplan and ROE falsely arrested and imprisoned Mr. Guerrero when they arrested him without cause and detained him at the police station for several hours. (*Id.* ¶¶ 36, 38, 48.) Because Defendants' entry into the Guerrero home was unlawful, their subsequent arrest and imprisonment of the couple was also unlawful. *Strutz*, 308 F. Supp. 2d at 786-87.

### 2. Plaintiffs Have Sufficiently Stated a Claim for Excessive Force and Assault and Battery

#### a. Defendants Used Excessive Force When They Detained and Arrested Mr. and Mrs. Guerrero After Entering Their Home Without a Warrant

Under the Fourth Amendment, Plaintiffs also have a right to be free from excessive force upon arrest. *Graham v. Connor*, 490 U.S. 386, 388 (1989). In asserting a claim of excessive force, courts examine three factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight. *Id.* at 396. Defendants correctly

---

intention, and neither the good faith of a defendant nor that of his employee will defeat plaintiff's right to recover." *Id.* (citation mark omitted).

note that an excessive force claim should be analyzed under an objectively reasonable standard. (Def. Mem. at 15.)

Case law supports a finding of excessive force in the case at bar. In *Valladares v. Cordero*, a police officer grabbed the 130-pound, 15-year-old plaintiff and slammed him headfirst into a car after the plaintiff shoved the police officer following the officer's scuffle with his brother. Civ.1:06cv1378 (JCC), 2007 U.S. Dist. LEXIS 63273 at **2-4 (E.D. Va. Aug. 27, 2007). This Court found that the *Graham* factors weighed in favor of plaintiff, especially in light of the difference in size between the two men, as well as the fact that plaintiff suffered a broken jaw, cuts and abrasions due to the incident. *Id.* at **10-15. As a result, this Court denied defendant's motion for summary judgment on the excessive force claim. *Id.* at *29.

Other courts have found evidence of excessive force in circumstances similar to the case at bar. *Park* v. *Shiflett*, 250 F.3d 843, 848, 852-54 (4th Cir. 2001) (affirming judgment against police on excessive force claim where plaintiff saw her husband being handcuffed and ran towards her husband, and where police sprayed her twice in the eyes with pepper spray at close range); *Jones v. Buchanan*, 325 F.3d 520, 523-31, 534 (4th Cir. 2003) (reversing summary judgment in favor of police on excessive force claim where respondent was drunk and yelling obscenities at the police station, and where police knocked him to the floor and jumped on him, crushing his nose, lacerating his lips and nose, and bruising his ribs); *Harrison*, 640 F. Supp. 2d at 702-04, 713 (Cacheris) (denying defendants' motion to dismiss excessive force claim where plaintiff alleged that defendants put him into a headlock and dropped him to the ground, causing his head to hit the pavement; this Court noted that "[w]ithout more facts" it was "unprepared" to find defendant's actions "objectively reasonable.").

### i.      Defendants Used Excessive Force Against Mrs. Guerrero

The defendant officers used excessive force against Mrs. Guerrero. At the time of the incident, Mrs. Guerrero was 5'3 and weighed only 145 pounds. (*See* Ex. B (Mrs. Guerrero Arrest Warrant).) As alleged in the Complaint, the evidence indicates that (1) Defendant Moore

forcibly pushed his way into the Guerrero home; (2) grabbed Mrs. Guerrero by her left arm; (3) attempted to pull her out of the house; (4) forcibly held her to the ground after back-up officers arrived; (5) told a female officer to tighten her handcuffs; and, once Mrs. Guerrero was in the squad car, (6) told her to lean back in the seat further even though the handcuffs hurt her hands. (Compl. ¶¶ 24-27, 31, 40-41.) As a result of Defendant Moore's actions, Mrs. Guerrero suffered injuries and bruises to her left shoulder and elbow and her right knee, and also suffered cuts on her wrists. (*Id.* at 51.)

Instead of providing legal support for their argument, Defendants simply argue from a factual standpoint -- and using facts that are in heavy dispute -- that the three *Graham* factors all weigh in favor of the Defendants. (Def. Mem. at 15-16.) This is inappropriate at the motion to dismiss stage. *Mylan Labs*, 7 F.3d at 1134. To the contrary, Plaintiffs have sufficiently alleged an excessive force claim against Defendant Moore. *See Valladares*, 2007 U.S. Dist. LEXIS 63273 at **2-4 (excessive force when officer slammed 130-pound plaintiff into a car); *Jones*, 325 F.3d at 523-31, 534; *Harrison*, 640 F. Supp. 2d at 702-04, 713. Defendants' claim that Mrs. Guerrero's injuries are "minor" is a factual issue which requires further development. *Harrison*, 640 F. Supp. 2d at 704 (finding that more facts were needed). Moreover, the drastically different accounts between Defendant Moore and Mrs. Guerrero preclude a finding of summary judgment.

### ii.     Defendants Used Excessive Force Against Mr. Guerrero

The defendant officers also used excessive force in dealing with Mr. Guerrero. As alleged in the Complaint, the evidence shows that (1) Defendants Moore, Potes, Hurley and Caplan "barged through the front door"; (2) in response to their entry, Mr. Geurrero returned from the kitchen; and (3) within seconds of entering the Guerrero home, Defendant Potes sprayed Mr. Guerrero in the face with pepper spray. (Compl. ¶¶ 31-32.) For Defendant Potes to use pepper spray on an individual -- in his own home -- who is merely returning from another room to assess what is happening is excessive. *See Park*, 250 F.3d at 852-54. Moreover, Defendants' allegations that Mr. Guerrero "charged at the officers" and "appeared" to "be

grabbing Mrs. Guerrero and/or reaching for Moore's gun" creates a factual dispute, making summary judgment improper. (Def. Mem. at 15.)

> **b.** **Defendants Committed Assault and Battery on Juan and Mrs. Guerrero When They Detained and Arrested Them After Entering Their Home Without a Warrant**

Defendants summarily argue -- again without analysis -- that Plaintiffs' "state-law assault and battery claims should be dismissed." (Def. Mem. at 15.)  Under the Code of Virginia, it is unlawful to intentionally touch a person in such a way as to create in the mind of that person a reasonable apprehension of an immediate battery.  *See Stith v. Commonwealth*, Rec. No. 1210-00-2, 2001 Va. App. LEXIS 245 (Va. Ct. App. May 8, 2001).  Similarly, under the Code of Virginia, it is unlawful for a person to touch another person when done in a rude, insolent, or angry manner.  *See Paramont Mining Corp. v. NLRB*, 631 F.2d 346, 349-50 (4th Cir. 1980).  Moreover, when a person is wrongfully arrested, and during the course of the arrest the police officer touches him or her in a manner consistent with an assault and battery, the police officer's actions constitute assault and battery.  *See Park*, 250 F.3d at 852 (police officers committed assault on battery on plaintiff where he "was wrongfully arrested, and in the course of this illegal arrest, he was thrown up against a wall, his legs were kicked apart, and he was handcuffed.")

When Defendants Moore, Potes, and Caplan entered the home, they knocked Mrs. Guerrero to the ground, and Defendant Moore forcibly held her down.  (Compl. ¶ 31.)  Seconds later Defendant Potes sprayed Juan Guerrero in the face with pepper spray.  (*Id.* at ¶ 32.)  Furthermore, Defendant Moore and an unknown officer placed Mr. and Mrs. Guerrero in handcuffs.  (*Id.* at ¶¶ 35-36.)  Once Mrs. Guerrero was in the squad car, Defendant Moore told a female officer to tighten her handcuffs, and he also told Mrs. Guerrero to lean back further in the car, even though she told him that the handcuffs were hurting her wrist.  (*Id.* at ¶¶ 40-41.)  Because Defendants' entry and subsequent arrest and imprisonment of Juan and Mrs. Guerrero were unlawful, (*see* supra, at Section III.A.1), their actions while arresting Mr. and Mrs. Guerrero constituted assault and battery.  *See Park*, 250 F.3d at 852.

3.   **Plaintiffs Have Sufficiently Stated a Claim for Intentional and Negligent Infliction of Emotional Distress**

Plaintiffs have properly pled a claim for both intentional and negligent infliction of emotional distress. Defendants' conduct against Plaintiffs was intentional or reckless, as well as, outrageous and intolerable, thus causing Plaintiffs severe emotional distress. The Supreme Court of Virginia first recognized intentional infliction of emotional distress as a cause of action in *Womack v. Eldridge*, 210 S.E.2d 145 (1974). There, the court held that the tort has four elements that must be proven: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007).[4] Furthermore, in *Shiflett v. GE Fanuc Automation Corp.*, Civ. No. 95-0073-C, 1996 U.S. Dist. LEXIS 14306, at **11-12 (W.D. Va. July 23, 1996), the district court found that a cause for negligent infliction of emotional distress exists in Virginia. In that case, the court stated that the plaintiff alleged all the necessary elements in his complaint to survive a Rule 12(b)(6) motion: (1) physical injury (2) proximately caused (3) by negligent conduct (4) wantonly inflicted by defendants (5) upon plaintiff. *Id.*

As alleged in Plaintiffs' Complaint, Defendants Moore, Potes, Hurley, DOEs and ROEs caused severe emotional distress to the Guerrero/Munguia family when Defendants forcibly entered the Guerrero home, knocked Mrs. Guerrero to the floor, pepper sprayed Mr. Guerrero in the face, and arrested them in front of their children, elderly mother, and neighbors. (Compl. ¶¶ 79-81.) Mr. Guerrero was depressed for a month following the incident (Compl. ¶ 52.) and Plaintiff KG is afraid to open the front door when people she does not know come to the home (Compl. ¶ 53.) In addition, Plaintiff JG was very sad following the incident, and would often ask

---

[4] In *Almy*, the Plaintiff sunk into a depression after being visited by a detective who accused her of writing several anonymous letters. 639 S.E.2d at 188. The court found that the Plaintiff had sufficiently pled facts describing her emotional distress where her emotional distress reached such a level of severity that "[e]very aspect of [her] life [was] fundamentally and severely altered," such that she "had trouble even walking out of the front door." *Id.*

his mother if the police were coming back.  (Compl. ¶ 54.)  He now becomes fearful every time that he sees a police officer.  (*Id.*)  Each of the Plaintiffs suffered great shame and humiliation given that many neighbors were gathered outside and witnessed the incident.  (Compl. ¶ 55.)  Furthermore, schoolmates of Plaintiffs JJG, MG and KG repeatedly asked about the incident at school, adding to the children's sense of shame and humiliation.  (Compl. ¶ 55.)

Defendants' alternative motion for summary judgment should likewise be denied because there are genuine issues of material fact that remain in dispute.  Defendants claim that Defendant Moore "lawfully attempted to serve a warrant," and that all incidents that followed resulted from Mrs. Guerrero's "wrongful behavior." (Def. Mem. at 20.)  As set forth in the Complaint, the Honorable Wenda Travers in the General District Court for Prince William County, held at a preliminary hearing that the evidence presented demonstrated that "the entry [of the police officer] was unlawful." (Compl. ¶ 49; Ex A at 84.)  Defendants are now wrongfully attempting to put the blame on Mrs. Guerrero for their own intentional and negligent actions.

Defendants also claim that none of Mr. and Mrs. Guerrero's injuries as reported on the ADC intake form were "serious or long-lasting." (Def. Mem. at 20.)  The ADC intake form does not provide a space to describe emotional injuries.  Nor is there an opportunity to describe injuries that may appear the next day.  Moreover, the entire Guerrero family was affected by Defendants illegal conduct.  The Complaint alleges that Plaintiffs JJG, MG, and KG also suffered intentional or negligent infliction of emotional distress, which Defendants fail to address and therefore concede.  At best, Defendants motion for summary judgment is premature.

**B.     Defendants Assertions of Contributory Negligence are Untenable**

Defendants wrongly assert that the doctrine of contributory negligence acts as a complete defense to all of the Plaintiffs' state law claims and that Defendants are entitled to a finding of contributory negligence as a matter of law at this point in the proceedings.  Even the cases Defendants cite contradict this assertion.

*First*, as the Defendants correctly point out, the doctrine of contributory negligence does not apply "where the defendant has committed an intentional tort." (Def. Mem. at 22.) (*quoting Valladares*, 2007 U.S. Dist. LEXIS 63273 at *18. As such, even assuming that the Guerrero family acted negligently -- a claim Plaintiffs adamantly dispute -- the doctrine of contributory negligence does not bar recovery on five of the six state law claims -- assault, battery, false arrest and imprisonment, and intentional infliction of emotional distress. *See Glasco v. Ballard*, 452 S.E.2d 854, 856 (Va. 1995) (recognizing assault and battery as an intentional tort); *Schoeneman v. Fairfax County*, 37 Va. Cir. 17, 22 (Va. Cir. Ct. 1995) (recognizing false arrest and imprisonment as an intentional tort); *Witcher v. Reid*, 70 Va. Cir. 415, 419-20 (Va. Cir. Ct. 2006) (citing intentional infliction of emotional distress as an example of an intentional tort).

*Second*, as to Plaintiffs' sixth state law claim - negligent infliction of emotional distress - the case law cited by the Defendants recognizes that contributory negligence is an issue to be resolved by a jury unless reasonable minds could not differ when looking at the evidence in the light most favorable to the Plaintiffs. *Griffin v. Shively*, 315 S.E.2d 210, 212 (Va. 1984). Here, the Defendant Officers not only entered the Guerrero home unlawfully, they were also the initial and sole aggressors, negating any reasonable argument that the Plaintiffs were contributorily negligent. (Comp. ¶¶ 19-41.) Moreover, as set forth in detail above, there are many factors which remain in dispute between the parties and established facts to which reasonable minds may differ in determining the parties' intent. Defendants themselves admit "that there may be facts in dispute about their intent." (Def. Mem. at 22.) As such, Defendants contributory negligence assertions are untenable at this time.

## C.    Defendants are Not Entitled to Qualified or Sovereign Immunity

### 1.    Qualified Immunity

Defendants erroneously contend that they are entitled to qualified immunity on the federal causes of action (Counts One and Two). It is well-established law that public officials who perform discretionary functions are not entitled to qualified immunity when their conduct

violates federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 812 (1982). In order to analyze whether a public official is entitled to qualified immunity, this Circuit requires a determination as to whether: (1) the alleged facts, "taken in the light most favorable to the party asserting the injury" demonstrate that the public official violated a constitutional right; and (2) a reasonable public official "could have believed [the challenged conduct] to be lawful, in light of clearly established law" at the moment the conduct occurred. *Meeker v. Edmundson*, 415 F.3d 317, 320 (4th Cir. 2005).

The Defendants engaged in conduct that violated federal statutory and constitutional rights, and a reasonable person would have known that the conduct violated such rights. Accordingly, Defendants have not and cannot establish that they are entitled to qualified immunity.

### a.      Right to be Free from Unlawful Search and Seizures (First Cause of Action)

As set forth in detail in section III.A.1, *supra*, the Fourth Amendment clearly protects against unreasonable searches and seizures. *See* U.S. Const., Amend. IV. Despite the Guerrero's clearly established Fourth Amendment protections, however, Defendant Officers unlawfully entered into the Guerrero home without a warrant, without probable cause, and without the presence of exigent circumstances. (Compl. ¶¶ 28, 31.) Fourth Amendment legal principles are commonly known, especially by trained police officers. As a result, Defendants cannot hide behind a shield of immunity for Count One of the Complaint where their warrantless entry into the Guerrero home was unreasonable and unlawful absent probable cause and exigent circumstances.

### b.      Right to be Free from Excessive Force (Second Cause of Action)

As set forth in detail in section II.A.2, *supra*, the Fourth Amendment also prohibits police from using excessive force during an arrest. *Graham*, 490 U.S. at 388; *see also Park*, 250 F.3d at 853 (no qualified immunity for police officers who sprayed one plaintiff with pepper spray

twice in the face, and later handcuffed and arrested both plaintiffs after throwing them against the wall and the ground); *Jones*, 325 F.3d at 528-29, 535 (no qualified immunity after police officer knocked plaintiff to the floor, breaking his nose and lacerating his face, when plaintiff was neither armed nor suspected of being armed); *Alexis v. McDonald's Restaurant of Mass., Inc.*, 67 F.3d 341, 353 (1st Cir. 1995) (no qualified immunity for police officer who removed plaintiff, who was not resisting arrest, from restaurant, handcuffed her, and dragged and carried her to the squad car, thus bruising her legs). As trained police officers, Defendant Officers should have known that the level of forced used against Mr. and Mrs. Guerrero was excessive. The Defendants are, therefore, not entitled to qualified immunity on the Second Cause of Action.

### 2.    Sovereign Immunity

Defendants erroneously contend that they are entitled to sovereign immunity on the state law claims. Sovereign immunity does not extend to intentional torts or negligent conduct. *See Elder v. Holland*, 208 Va. 15, 19-20 (1967) (police officer not immune from liability because the facts alleged, if proven, constitute an intentional tort); *see also James v. Jane,* 221 Va. 43, 55 (1980) (government hospital employee not entitled to immunity when he negligently failed to exercise reasonable care when attending to a patient).

The individual Defendant officers' actions as alleged in Counts Three through Eight of the Complaint, and as described in detail in this Opposition, sufficiently describe the intentional and negligent torts Defendants committed against the Plaintiffs. (Compl. ¶¶ 65-84.) Defendant Chief Deane is also not entitled to sovereign immunity because -- as evident by the Defendants' own exhibits to their moving papers -- he knowingly approved of the officers' unlawful conduct as "justified." (Compl. ¶¶ 9, 17; Ex. C to Def. Mem. at 24.) Furthermore, Defendants PWC and PWCPD (including Defendant Chief Deane) are not entitled to sovereign immunity because they promulgated the two Resolutions and/or were responsible for supervising the individual officers as they carried out the police policies authorized by the Resolutions, which created a racially-charged environment that encourages police officers to target and harass Latino residents.

(Comp. ¶¶ 16-18.)  Such actions were willful, were conducted in bad faith, and constituted gross negligence.

**D.      Prince William County and the Prince William County Police Department Are Properly Named Defendants**

The *Monell* doctrine of municipal liability under § 1983 is well established: a municipality may be held liable under § 1983 if it causes a deprivation of federal rights through an official policy or custom.  *See Frazier v. City of Norfolk,* 236 F.R.D. 273, 276 (E.D. Va. 2006).  Moreover, it is well settled that a public official may be liable if the "conduct directly causing the [constitutional] deprivation was done to effectuate an official policy or custom for which [the official] was responsible." *Fisher v. Washington Metro. Area Transit Auth.,* 690 F.2d 1133, 1143 (4th Cir. 1982).  The City policy 'need only cause the constitutional violation; it need not be unconstitutional per se.'" *Watkins v. City of Oakland, California,* 145 F.3d 1087, 1092 (9th Cir. 1998) (quoting *Chew v. Gates,* 27 F.3d 1432, 1444 (9th Cir. 1994)).

PWC is a proper defendant because it enacted the Resolution, which in turn created an atmosphere that empowered police officers to violate constitutional rights of local Latino citizens.  Defendant PWCPD is a proper defendant because it is responsible for executing PWC's enforcement actions and these actions facilitated the constitutional violations at issue.[5]  *See Chaloux v. Killeen,* 886 F.2d 247, 251-52 (9th Cir. 1989) (finding county sheriffs were proper defendants in a suit to enjoin enforcement of allegedly unconstitutional state statutes because sheriffs had a statutory duty to enforce and administer the statutes and their actions caused the alleged injury).

**1.      Defendants Created the Policies and Customs that were the Catalyst for Defendant Officers' Actions**

Defendants are proper defendants because they enacted the Resolution and executed the necessary enforcement actions that empowered police officers to violate constitutional rights of

---

[5] At a minimum, discovery is appropriate to determine what relevant police policies were in effect during the incident.

local Latino citizens.  (Compl. ¶ 18.); *See Chaloux v. Killeen*, 886 F.2d 247, 251-52 (9th Cir. 1989) (finding county sheriffs were proper defendants in a suit to enjoin enforcement of allegedly unconstitutional state statutes because sheriffs had a statutory duty to enforce and administer the statutes and their actions caused the alleged injury).

Following release of the Resolution and subsequently enacted policies and procedures, local police officers began engaging in the unlawful conduct alleged in Counts One through Eight of the Complaint.  (Compl. ¶ 18.)  Given the liberal requirements of notice pleading, the Complaint clearly states a claim for relief against these Defendants. *Estate of Harvey v. Roanoke City Sheriff's Office*, Civ. No. 7:06CV00603, 2007 U.S. Dist. LEXIS 12614, at *15-16 (E.D. Va. 2007) (motion to dismiss as to Sheriff in her official capacity denied); *see also Frazier*, 236 F.R.D. at 275 (E.D. Va. 2006) (holding that the trial court must consider plaintiff's interest in choosing the parties to the action).

### 2.    Defendant PWCPD Failed to Adequately Supervise Subordinates

Supervisors may at times be held liable for the constitutional injuries that their subordinates commit. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  In order to establish supervisor liability under 42 U.S.C. § 1983, the plaintiffs must establish that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that poised a "a pervasive and unreasonable risk" of constitutional injury to citizens like the Plaintiffs; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.* at 799; *see also Ensko v. Howard County, MD.*, 423 F. Supp. 2d 502, 511-12 (D. Md. 2006) (police chief liable for action of subordinates when there was evidence that he knew they had been harassing plaintiff yet he did nothing).

Defendant PWCPD certainly had constructive knowledge of a risk where the Resolution and subsequently enacted policies and procedures caused Defendant officers to engage in

targeting Latinos solely, and unconstitutionally, on the basis of their race.  PWCPD is also a proper defendant because it failed to adequately supervise police officers as they carried out policies stemming from the Resolution and subsequently enacted policies and procedures. Defendants ignored the inherent risk of racial profiling that the Resolution and subsequently enacted policies and procedures created by failing to create policies that would prevent officers from engaging in its unconstitutional practice.

Indeed, given the publicity that PWC and the PWCPD have received in recent years for enacting their immigration scheme, they are on notice that relationships between police and Latino residents are strained and, accordingly, should be enacting additional safeguards to ensure that Latino residents are protected.

## IV.      CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment should be denied.

Respectfully Submitted,

/s/ Robert H. Cox
Robert H. Cox, VSB # 33118
Yolanda Hawkins-Bautista (*admitted pro hac*)
Sonia W. Murphy (*admitted pro hac*)
Eduardo R. Ferrer (*admitted pro hac*)
Veronica N. Berger (*admitted pro hac*)
Chantel Lee (*admitted pro hac*)
Sasha Hodge-Wren (*admitted pro hac*)
Howrey LLP
1299 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 783-0800
Facsimile: (202) 383-6610

Christina Guerola Sarchio (*admitted pro hac*)
Patton Boggs LLP
2550 M Street, N.W.
Washington, DC 20037
Telephone: (202) 457-7527
Facsimile: (202) 457-6513

***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2009, I electronically filed the foregoing Memorandum of Points and Authorities In Opposition to Defendants' Motion to Dismiss Or, In The Alternative, Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system.  Service of the Memorandum will be made electronically and by U.S. Mail, first-class postage pre-paid to the following counsel of record:


M. Alice Rowan
Assistant County Attorney
One County Complex Court
Prince William, VA 22192-9201
Telephone: (703) 792-6630
Fax: (703) 792-6633


/s/ Robert H. Cox
Robert H. Cox, VSB 33118