IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| ESPERANZA GUERRERO, JUAN GUERRERO, J. GUERRERO, JR. (MINOR), M. GUERRERO (MINOR), K. GUERRERO (MINOR), J. GUERRERO (MINOR), AND MARIA MUNGUIA;<br><br>    Plaintiffs,<br><br>    v.<br><br>CHARLIE T. DEANE, IN HIS OFFICIAL CAPACITY, AND DAVID L. MOORE, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, LUIS POTES, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, ADAM HURLEY, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, MATTHEW CAPLAN, IN HIS OFFICIAL AND INDIVIDUAL CAPACITY, DOES 1-5 AND ROES 1-5 IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>PRINCE WILLIAM COUNTY;<br><br>    Defendants. | Civil Action No. 1:09-cv-1313 (JCC/TRJ)<br><br>DEMAND FOR JURY TRIAL |

## FIRST AMENDED COMPLAINT

Plaintiffs, Esperanza Guerrero, Juan Guerrero, J. Guerrero Jr., M. Guerrero, K. Guerrero, J. Guerrero, and Maria Munguia, bring this action against Prince William County ("PWC" or "County") and certain of its officers for civil rights abuses in violation of the United States Constitution, federal statutes, and the laws of Virginia. Plaintiffs seek declaratory and injunctive

relief, compensatory damages, attorneys' fees and other relief as the Court deems just and proper. Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

2.      This Court has supplemental jurisdiction under the Constitution of the Commonwealth of Virginia pursuant to 28 U.S.C. § 1367.

3.      This Court has personal jurisdiction over Prince William County, which is located in the Eastern District of Virginia.

4.      This Court has personal jurisdiction over the individual defendants, who maintain employment and/or reside in the Eastern District of Virginia.

5.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(a) in that the County is subject to personal jurisdiction within the Eastern District of Virginia, and the events which give rise to this action occurred within the Eastern District of Virginia

## PARTIES

6.      Plaintiffs Juan and Esperanza Guerrero ("Mr. & Mrs. Guerrero") are husband and wife. The couple resides in Prince William County with their four minor children -- Plaintiffs J. Guerrero Jr., M. Guerrero, K. Guerrero, and J. Guerrero. The children are ages 16, 14, 12 and 6 respectively. The Guerreros are a family of Hispanic descent.

7.      Plaintiff Maria Munguia, the mother of Mrs. Guerrero, also resides with the Guerreros. Ms. Munguia is 69 years old and of Hispanic descent.

8.     Defendant Prince William County is a county existing pursuant to Virginia law, with its principal place of business located at 1 County Complex Court, Prince William, Virginia, 22192.  Upon information and belief, Defendant PWC includes, operates, governs, and is responsible for the PWCPD pursuant to the laws of Virginia and PWC.

9.     Defendant Chief Charlie T. Deane is a resident of Virginia.  Chief Deane, as the commanding officer of the PWCPD, is responsible for the policies, practices and customs within the department.  In his role as Chief of Police, Chief Deane is charged with hiring, screening, training, retaining, disciplining, overseeing and supervising his subordinate officers.  Chief Deane is also responsible for ensuring that his officers conduct themselves within the boundaries of the law.  At all relevant times, Chief Deane acted within his capacity as an employee of the PWCPD under the color of state law.

10.     Defendant David L. Moore is a Prince William County police officer, who during all relevant times of this action, acted within his capacity as an employee of the PWCPD under the color of state law, or in his individual capacity, or both.

11.     Defendant Luis Potes is a Prince William County police officer, who during all relevant times of this action, acted within his capacity as an employee of the PWCPD under the color of state law, or in his individual capacity, or both.

12.     Defendant Adam Hurley is a Prince William County police officer, who during all relevant times of this action, acted within his capacity as an employee of the PWCPD under the color of state law, or in his individual capacity, or both.

13.     Defendant Matthew Caplan is a Prince William County police officer, who during all relevant times of this action, acted within his capacity as an employee of the PWCPD under the color of state law, or in his individual capacity, or both.

14.     Defendants DOES 1 through 5 are Prince William County police officers, who during all relevant times of this action, acted within their capacity as employees of the PWCPD under the color of state law, or in their individual capacity, or both. Plaintiffs allege that DOES 1 through 5 are legally responsible for the wrongs committed against Plaintiffs as stated in this Complaint. When Plaintiffs become aware of the true identities of one or more DOE defendants, Plaintiffs will amend this Complaint to add or substitute them as named Defendants.

15.     Defendants ROES 1 through 5 are Prince William County police officers, who during all relevant times of this action, acted within their capacity as employees of the PWCPD under the color of state law, or in their individual capacity, or both. Plaintiffs allege that ROES 1 through 5 are legally responsible for the wrongs committed against Plaintiffs as stated in this Complaint. When Plaintiffs become aware of the true identities of one or more ROE defendants, Plaintiffs will amend this Complaint to add or substitute them as named Defendants.

16.     Plaintiffs allege that each of the Defendants caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries for the following reasons: Defendants 1) personally participated in the conduct in question or acted jointly with others, 2) authorized, acquiesced or set in motion policies, plans or actions that led to the unlawful conduct, 3) failed to take action to prevent the unlawful conduct, 4) failed or refused with deliberate indifference to maintain adequate training and supervision and/or 5) ratified the unlawful conduct taken by employees under his/her direction and control.

## FACT ASSERTIONS

17.     On July 10, 2007, Prince William County ("PWC") Board of Supervisors passed Resolution 07-609, which sought to empower local police officers and county employees to inquire into the immigration status of individuals in their community.[1]

---

[1] Resolution 07-609 was later modified by Resolution 08-500 on April 29, 2008.

18.    In order to effectuate the Resolution's policies, the County directed the Prince William County Police Department and Chief of Police Charlie Deane to promulgate police standards and protocol in line with the Resolution.

19.    Since the time PWC passed Resolution 07-609, Prince William County police officers have more aggressively targeted and wrongfully arrested many Hispanic citizens.

20.    On Saturday, November 24, 2007, at approximately 11:30am, the Guerreros, a family of Hispanic descent, were at their home in Prince William County. Also present were Mrs. Guerrero's nephews R. Munguia, age 17, and A. Munguia, age 14.

21.    Plaintiff Mrs. Guerrero heard a knock at the door, and opened it to find Defendant Moore.

22.    Defendant Moore asked to speak with an Antonia Munguia. Antonia Munguia is Plaintiff Mrs. Guerrero's sister, and is also the mother of R. and A. Munguia.

23.    Mrs. Guerrero replied that Ms. Munguia did not live at the residence, but that she would be more than happy to take his business card.

24.    In response, Defendant Moore began twirling one hand in the air, and kept the other hand behind his back as if reaching for his handcuffs. In addition, he retorted that "my business is that I am the police." At no time did Defendant Moore state a reason for why he needed to speak with Ms. Munguia, produce any supporting documentation, or ask Mrs. Guerrero for any identification.

25.    At this point, Mrs. Guerrero attempted to close the front door. In response, Defendant Moore wedged his foot in the door. Mrs. Guerrero tried shutting the door with her right knee, but Defendant Moore kept trying to push his way into the home, putting pressure on Mrs. Guerrero's knee to such an extent that it left bruises on her knee.

26.     In response, Mrs. Guerrero asked, "What are you doing?  This is my house!"
Defendant Moore, however, forcefully tried to pull her out of the house by her left arm, which
subsequently caused bruising to her arm, shoulder and right knee.  He also attempted to put her
in a headlock.  At this point, Defendant Moore told Mrs. Guerrero that she was under arrest for
assault and battery.

27.     Plaintiff J. Guerrero, who is 6, came downstairs, witnessed the altercation, and
began to cry.  Maria Munguia, and the three remaining Plaintiff children J. Guerrero Jr., M.
Guerrero, and K. Guerrero, also came into the foyer and began to cry.  14 year old Plaintiff M.
Guerrero ran to call the police.  Defendant Moore continued to try and pull Mrs. Guerrero out of
the house.  He also called for back-up assistance at this time.

28.     Defendant Moore continued trying to alternatively push his way into the house or
pull Mrs. Guerrero outside.  At one point, Mrs. Guerrero told him, "If you think we are illegal,
we are not."

29.     At this time, Plaintiff Mr. Guerrero was upstairs watching television.  He
overheard the confrontation and walked to the top of the stairs.  From his vantage point, he could
see Defendant Moore trying to enter the home and grabbing Mrs. Guerrero.

30.     Mr. Guerrero then came downstairs and asked what all the noise was about.  In
Spanish, Mrs. Guerrero replied that she thought Defendant Moore may have mistaken her for
Antonia Munguia.  In English, Mr. Guerrero approached Defendant Moore and asked him if he
needed to see her identification.  Mr. Guerrero retreated to the kitchen to locate Mrs. Guerrero's
identification.

31.     14-year-old M. Guerrero was still on the phone when three additional officers arrived several minutes later, including Defendant Luis Potes, Defendant Adam Hurley, and Defendant Matthew Caplan.

32.     Together, the four Defendants barged through the front door.  The four children began screaming, and Mr. Guerrero quickly returned from the kitchen. Defendants were carrying pepper spray, but did not display their weapons.  When they barged through the door, Mrs. Guerrero fell to the ground, hitting the nearby steps and injuring her left shoulder and elbow. Defendant Moore forcibly held her to the ground, exacerbating her injuries.

33.     Within a split second of the officers entering the home, Defendant Potes sprayed Mr. Guerrero in the face with the pepper spray.

34.     Mr. Guerrero's eyes started hurting immediately and he stumbled back to the kitchen.

35.     Plaintiff Maria Munguia began asking what happened and Defendant Potes pointed the can of pepper spray at her until one of the children shouted that she was elderly.

36.     Defendant Potes also pointed the can of pepper spray at Mrs. Guerrero; however, Defendant Moore was already holding Mrs. Guerrero to the ground and told Defendant Potes not to spray her.  At this point, Defendant Moore told her that she was under arrest for assault and battery and placed her in handcuffs.

37.     Defendant Moore subsequently dragged Mrs. Guerrero out of the house and walked her to his squad car.  Another police officer also arrested Mr. Guerrero and brought him out of the home in handcuffs.

38.    At this time, two police investigators, one male and one female, also arrived on the scene.   The male police officer pulled Plaintiffs J. Guerrero, Jr., M. Guerrero, and K. Guerrero aside separately to ask what happened.

39.    Mr. Guerrero waited outside for an ambulance for more than thirty minutes. While outside, he did not know why he was under arrest.

40.    Mrs. Guerrero then asked Defendant Moore if he had a warrant.   In response, he stated that he had "something," but did not say what it was or show her the document.   She asked him why he would not tell her, and he did not respond.   At this time, the female officer searched Mrs. Guerrero before placing her in the back of the squad car.

41.    Once in the car, Defendant Moore asked the female officer to tighten the handcuffs.   The officer complied and tightened the cuffs, which cut Mrs. Guerrero's left hand.

42.    Once they arrived at the police station, Defendant Moore instructed Mrs. Guerrero to lean back so that he could unbuckle the seatbelt.   Although she stated that the handcuffs were hurting her hands, Defendant Moore told her to lean back even farther.

43.    Once inside the police station, another officer finally showed Mrs. Guerrero a truancy summons for Antonia Munguia.   As subsequently established at a preliminary hearing regarding this incident, the sole reason for Defendant Moore's visit to the Guerrero home was to execute the summons.

44.    At this point, Mrs. Guerrero showed her injuries to an Internal Affairs Officer – he was also one of the officers who interviewed Mr. and Mrs. Guerrero's children in response to 14 year old M. Guerrero's call to 911.

45.    The Internal Affairs officer examined Mrs. Guerrero's left side from the elbow down to her finger.   He refused to examine her shoulder.

46.     The Internal Affairs Officer also asked Mrs. Guerrero to sign a waiver that stated she did not need medical treatment.  She refused to sign the waiver and insisted that she needed to be seen by a doctor.

47.     In response, several officers stated that they would not take Mrs. Guerrero to a doctor and refused her medical treatment.

48.     Mrs. Guerrero was detained at the station for the remainder of the day, held in a jail cell all of the following day, and was released the morning of the third day.

49.     Mr. Guerrero was released the same night on bond.  While the spouses were incarcerated, the four children were home alone with Plaintiff Maria Munguia.

50.     Mrs. Guerrero was arrested and charged with assault and battery of a law enforcement officer and obstruction of justice by knowingly attempting to intimidate or threaten a law enforcement officer.  On January 25, 2008, a preliminary hearing was held before the Honorable Wenda Travers in the General District Court of Prince William County.  The Court found Mrs. Guerrero not guilty on the obstruction of justice charge because the evidence indicated that "the entry [by the police officer] was unlawful." The Court also struck the charge of assault and battery.

51.     Mr. Guerrero was charged with obstruction of justice without threat or force.  On March 4, 2008, he was found not guilty of the charge in the General District Court of Prince William County.

52.     As a result of the incident, Mrs. Guerrero received injuries and bruises to her left shoulder and elbow, bruising to her right knee, and cuts on her wrists.

53.     Mr. Guerrero was depressed for a month following the incident.  In addition, his vision in his right eye remains impaired.

54.    Since the incident, 12-year-old K. Guerrero is afraid to open the front door when people she does not know come to the home.

55.    6-year-old J. Guerrero was very sad following the incident, and would often ask his mother if the police were coming back.  In addition, he now becomes fearful every time that he sees a police officer.

56.    Each of the Plaintiffs suffered great shame and humiliation given that many neighbors were gathered outside and witnessed the incident.   Furthermore, schoolmates of Plaintiffs J. Guerrero Jr., M. Guerrero, and K. Guerrero repeatedly asked about the incident at school, adding to the children's sense of shame and humiliation.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of the Fourth Amendment to the United States Constitution (Unreasonable Searches and Seizures)

### Against PWC, Chief Deane, In His Official Capacity, Officers Moore, Potes, Hurley and Caplan, In Their Official and Individual Capacities

57.    Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

58.    The Fourth Amendment protects against unreasonable searches and seizures.

59.    In no place is this zone of privacy more defined than in an individual's home. The Fourth Amendment prohibits officers to enter an individual's home without a probable cause or exigent circumstances.

60.     On November 24, 2007, Defendants Moore, Potes, Hurley and Caplan unlawfully entered the Plaintiffs' home without a warrant, and without the presence of exigent circumstances.

61.     Defendants Moore, Potes, Hurley and Caplan unlawfully violated Plaintiffs' right to be free from unreasonable seizure without probable cause.

62.     Furthermore, the underlying offense - a "truancy" violation - was minor, and was not committed by any of the Plaintiffs.

### SECOND CAUSE OF ACTION

**Violation of the Fourth Amendment to
The United States Constitution
(Excessive Force)**

**Against PWC, Chief Deane, In His Official Capacity, Officers Moore, Potes, Hurley,**

**Caplan and ROE, In Their Official and Individual Capacities**

63.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

64.     Defendants Moore, Potes, Hurley and Caplan unreasonably used excessive force against Mr. and Mrs. Guerrero when Defendants forcibly entered the Guerreros' home knocking Mrs. Guerrero to the floor and pepper spraying Mr. Guerrero in the face causing physical and emotional damage to Mr. and Mrs. Guerrero.

65.     Defendants ROE and Moore unreasonably used excessive force against Mrs. Guerrero when Defendant Moore instructed Defendant ROE, and she complied, to tighten the handcuffs on Mrs. Guerrero's wrist causing her to suffer physical and emotional injuries.

## THIRD CAUSE OF ACTION

### Va. Code Ann. § 18.2-57 (Assault)

### Against Defendants Moore, Potes, Hurley, Caplan and ROE, In Their Official and

### Individual Capacities

66.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

67.     Under the Code of Virginia, it is unlawful to intentionally touch a person in such a way as to create in the mind of that person a reasonable apprehension of an immediate battery.

68.     Defendants Moore, Potes, Hurley and Caplan assaulted Mr. and Mrs. Guerrero when Defendants forcibly entered the Guerreros' home knocking Mrs. Guerrero to the floor and pepper spraying Mr. Guerrero in the face intentionally causing harmful and/or offensive contact to the Plaintiffs which caused in Plaintiffs' minds a reasonable apprehension of an imminent battery.

69.     Defendants ROE and Moore assaulted Mrs. Guerrero when Defendant Moore instructed Defendant ROE to tighten the handcuffs on Plaintiff's wrists, and she complied, intentionally causing harmful and/or offensive contact to the Plaintiff which caused in Plaintiff's mind a reasonable apprehension of an imminent battery.

## FOURTH CAUSE OF ACTION

### Va. Code Ann. § 18.2-57 (Battery)

### Against Defendants Moore, Potes, Hurley, Caplan and ROE, In Their Official and

### Individual Capacities

70.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

71.   Under the Code of Virginia, it is unlawful for a person to touch another person when done in a rude, insolent or angry manner.

72.   Defendants Moore, Potes, Hurley and Caplan, without justification or Mr. and Mrs. Guerrero's consent, intentionally caused a harmful and/or offensive contact with Plaintiffs when Defendants forcibly entered the Guerreros' home knocking Mrs. Guerrero to the floor and pepper spraying Mr. Guerrero in the face in violation of the law.

73.   Defendants ROE and Moore, without justification or Mrs. Guerrero's consent, intentionally caused a harmful and/or offensive contact with Plaintiff when Defendant Moore instructed Defendant ROE, and she complied, to tighten the handcuffs on Plaintiff's wrists in violation of the law.

### FIFTH CAUSE OF ACTION

**False Arrest and Imprisonment**

**Against Defendants Moore, Potes, Hurley, Caplan, DOES and ROES, In Their Official and Individual Capacities**

74.   Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

75.   Under the Code of Virginia, it is unlawful to restrain an individual's liberty without sufficient legal excuse.

76.   Defendants Moore, Potes, Hurley, Caplan, DOES and ROES falsely arrested and imprisoned the Guerrero family when Defendants unlawfully entered Plaintiffs' home without a warrant and placed Plaintiffs under a reasonable apprehension that force would be employed unless they willingly submitted, and they did submit to the extent that they were denied freedom of action.

77.    Defendants Moore, Potes, Hurley, Caplan, DOES and ROES falsely arrested and imprisoned Mr. Guerrero when they arrested Mr. Guerrero without cause and detained him at the police station for several hours.

78.    Defendant Moore falsely imprisoned Mrs. Guerrero when Defendant held Mrs. Guerrero to the ground in her own home despite the fact that she was not under arrest and despite the fact that the police had no lawful basis to enter Mrs. Guerrero's home.

79.    Defendants Moore, Potes, Hurley, Caplan, DOES and ROES falsely arrested Mrs. Guerrero and detained her at the station for several days after Defendants unlawfully entered Guerreros' home without a warrant.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Against Defendants Moore, Potes, Hurley, Caplan, DOES and Roes, In Their Official and Individual Capacities

80.    Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

81.    Defendants' conduct against all Plaintiffs was intentional and/or reckless. Defendants' conduct was outrageous and intolerable causing Plaintiffs severe emotional distress.

82.    Defendants Moore, Potes, Hurley, Caplan, DOES and ROES caused severe emotional distress to the Guerrero/Munguia family when Defendants forcibly entered the Guerreros' home knocking Mrs. Guerrero to the floor, pepper spraying Mr. Guerrero in the face and arresting them in front of the Guerreros' children, elderly mother and neighbors.

### SEVENTH CAUSE OF ACTION

#### Negligent Infliction of Emotional Distress

**Against Defendants Moore, Potes, Hurley, Caplan, DOES and ROES, In Their Official and Individual Capacities**

83.     Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

84.     Defendants' conduct against Mr. and Mrs. Guerrero was intentional and/or reckless. Defendants' conduct was outrageous and intolerable, causing Mr. and Mrs. Guerrero severe emotional distress and physical injury.

85.     Defendants Moore, Potes, Hurley, Caplan, DOES and ROES caused severe emotional distress and physical injury to Mr. and Mrs. Guerrero when Defendants forcibly entered the Guerreros' home knocking Mrs. Guerrero to the floor, pepper spraying Mr. Guerrero in the face and arresting them in front of the Guerreros' children, elderly mother and neighbors.

### PRAYER FOR RELIEF

WHEREFORE, in light of the foregoing, Plaintiffs respectfully request the following relief:

(a) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring Defendants' actions violate the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983;

(b) an order awarding Plaintiffs nominal, compensatory, special, statutory, punitive damages and attorneys' fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988;

(c) an order awarding pre-judgment and post-judgment interest to the extent permitted by law; and

- 16 -

(d) such further relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a jury trial on all issues triable by a jury.

Respectfully submitted,

Attorneys for Plaintiffs

**Jose L. Perez** (*admitted pro hac vice*)
jperez@latinojustice.org
**Diana S. Sen** (*admitted pro hac vice*)
dsen@latinojustice.org
LATINOJUSTICE/PUERTO RICAN LEGAL
DEFENSE AND EDUCATION FUND (PRLDEF)
99 Hudson Street, 14th Floor
New York, NY 10013
212.739.7575 Phone
212.431.4276 Fax

/s/ Robert H. Cox
**Robert H. Cox** VA #33118
coxr@howrey.com
**Sean P. Beaty** VA #67941
beatys@howrey.com

**Yolanda Hawkins-Bautista**
(*admitted pro hac vice*)
hawkins-bautistay@howrey.com
**Sonia W. Murphy** (*admitted pro hac vice*)
murphysonia@howrey.com
**Eduardo R. Ferrer** (*admitted pro hac vice*)
ferrere@howrey.com
**Veronica N. Berger** (*admitted pro hac vice*)
bergerv@howrey.com
**Chantel Lee** (*admitted pro hac vice*)
leechantel@howrey.com
**Sasha Hodge-Wren** (*admitted pro hac vice*)
hodge-wrens@howrey.com
Howrey LLP
1299 Pennsylvania Ave., NW
Washington, D.C. 20004
202.783.0800 Phone
202.383.6610 Fax

**Christina Guerola Sarchio**
(*admitted pro hac vice*)
csarchio@pattonboggs.com
Patton Boggs
2550 M Street, NW
Washington, DC 20037-1350
202. 457.7527 Phone
202. 457.6513 Fax

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2010, I electronically filed the foregoing First Amended Complaint with the Clerk of the Court using the CM/ECF system. Service of the First Amended Complaint will be made electronically and served by U.S. Mail, first-class postage pre-paid to the following counsel of record:

M. Alice Rowan
Assistant County Attorney
One County Complex Court
Prince William, VA 22192-9201
Telephone: (703) 792-6630
Fax: (703) 792-6633

/s/ Robert H. Cox
Robert H. Cox, VSB 33118