IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ESPERANZA GUERRERO, *et al.*,    )
                                 )
     Plaintiffs,                 )
                                 )
          v.                     )    1:09cv1313 (JCC)
                                 )
CHARLIE T. DEANE, *et al.*,      )
                                 )
     Defendants.                 )

**M E M O R A N D U M    O P I N I O N**

     This matter is before the Court on Defendants' Renewed
Motion for Summary Judgment [Dkt. 107] and Plaintiffs' Motion
for Partial Summary Judgment [Dkt. 112].  For the following
reasons, the Court will grant in part and deny in part
Defendants' Motion and will deny Plaintiffs' Motion.

**I.  Background**

     A.  Factual Background

     This case arises from a November 24, 2007 incident
involving a number of Prince William County (the "County")
police officers and the Guerrero family of Manassas, Virginia.
As a result of the incident, Plaintiffs have alleged Fourth
Amendment violations pursuant to 42 U.S.C. ¶ 1983, as well as
certain Virginia state-law claims.

i.    Officer Moore Arrives and Steps Into the
      Guerrero Home

On November 24, 2007, Defendant Officer David Moore,
an officer in the Prince William County Police Department (the
"Department"), went to Plaintiffs' home in order to serve a
summons on Antonia Munguia. (D. SMJ at 2; P. Opp. at 1). The
summons required Ms. Munguia to appear before the Juvenile and
Domestic Relations District Court for a Class 3 Misdemeanor
charge of failing to assist the school in enforcing the
standards of compulsory school attendance as a parent of a
student enrolled in a public school pursuant to Va. Ann. Code §
22.1-279.3. (D. SMJ at 2; D. Ex.[1] A1, A2.) The summons listed
the Guerrero home in Manassas as Ms. Munguia's address, and
while the parties dispute whether Ms. Munguia lived at the
Guerrero residence on November 24, 2007, and whether Ms.
Guerrero told Officer Moore that Ms. Munguia lived at the
Guerrero residence, it is undisputed that Ms. Guerrero told
Officer Moore that Ms. Munguia was not there that day. (D. SMJ
at 3; P. Opp. at 1).

After telling Officer Moore that Ms. Munguia was not
present, Ms. Guerrero asked for his business card. (D. SMJ at
3; P. Opp. at 2.) The parties dispute what occurred immediately
following this initial exchange. According to Plaintiffs, after
asking for Officer Moore's card, Ms. Guerrero began closing the

---

[1] Defendants exhibits will be referred to as "D. Ex."; Plaintiffs' exhibits
will be referred to as "P. Ex."

door, believing their conversation to have ended. (P. Opp. at 2.) According to Defendants, Ms. Guerrero took a step backward into her house while further opening the front door. (D. SMJ at 3.) Next, according to Plaintiffs, Officer Moore attempted to force his way into the Guerrero home. (P. Opp. at 2.) Defendants, in contrast, state that Ms. Guerrero charged forward and pushed Officer Moore out of the house. (D. SMJ at 3.)

Significantly, both parties agree that upon producing his business card, Officer Moore stepped onto the threshold of the Guerrero home. (D. SMJ at 3; P. Opp. at 2.) Ms. Guerrero then closed the door on Officer Moore's leg or foot, though the parties dispute the amount of force used. (D. SMJ at 3; P. Opp. at 2.) Also undisputed, after Ms. Guerrero closed the door on Officer Moore, he struggled against the door in attempting to enter the home to arrest her. (D. SMJ at 4; P. Opp. at 2.)

> ii. Officer Moore Radios for Help and Officers Respond

While Officer Moore's foot was wedged in the Guerrero door with Ms. Guerrero pushing the door shut from the inside, Officer Moore called dispatch for help. (D. SMJ at 4.) Dispatch initially issued a "Signal One" alert, an emergency distress call, but Officer Moore then radioed asking for three cars to arrive only in normal mode. *Id.* The first officer to arrive in response was Officer Luis Potes, followed immediately by Officers Matthew Caplan and Adam Hurley. (D. SMJ at 5; P.

Opp. at 3.)  When the officers arrived, they saw Officer Moore's
leg caught in the door and his struggling against the door being
closed on him.  (D. SMJ at 5.)  Officer Moore then told the
officers that Ms. Guerrero was under arrest and asked for their
help to push the door open in order to enter and arrest Ms.
Guerrero.  (D. SMJ at 5.)

### iii.  The Officers Enter the Guerrero Home

The Officers then pushed open the door, freeing
Officer Moore's leg, and entered the home.  (D. SMJ at 6.)  It
is undisputed that the officers' entry forced Ms. Guerrero to
the floor, though the parties dispute whether Ms. Guerrero then
struggled with the officers and resisted the arrest.  (D. SMJ at
6; P. Opp. at 4.)  The officers stayed in the small foyer area
immediately behind the door, except for Officer Potes, who went
several feet further into the house and up a few steps into the
raised living area.  (D. SMJ at 6.)  The parties dispute whether
the remaining members of the Guerrero family were yelling and
screaming at the officers in the sunken foyer.  (D. SMJ at 4; P.
Opp. at 6.)  The parties do not dispute, however, that as the
officers in the foyer were effecting Ms. Guerrero's arrest, Mr.
Guerrero came towards the officers.  (D. SMJ at 6; P. Opp. at
4.)

Mr. Guerrero came out of a neighboring room and either
"ran rapidly" or "walked fast" towards the officers who were

effecting an arrest of Ms. Guerrero.  (D. SMJ at 7.)  The
parties dispute whether Officer Potes, at this time, gave the
Guerrero family numerous commands to stay back.  (P. Opp. at 4.)
As Mr. Guerrero approached the officers, he made some gestures
with his hands, alternatively described as either "like he was
trying to grab something" or "with his hand out" as if to show
he was not holding anything.  (D. SMJ at 7; P. Opp. at 17.)
Once Mr. Guerrero was "very close" to the officers, Officer
Potes deployed oleoresin capsicum ("pepper") spray on Mr.
Guerrero and pushed him up the stairs.  (D. SMJ at 7.)

      iv.    <u>The Officers Arrest Mr. and Ms. Guerrero</u>

The parties dispute whether Ms. Guerrero resisted
arrest by grabbing the banister and refusing to let go.  (D. SMJ
at 5; P. Opp. at 5.)  Officer Moore then arrested and handcuffed
Ms. Guerrero and escorted her outside.  (D. SMJ at 8.)  After
placing Ms. Guerrero under arrest, Officers Potes and Caplan
returned inside and placed Mr. Guerrero under arrest.  *Id.*

Officer Moore called for a female officer to conduct a
search of Ms. Guerrero, and Officer Karen Muehlhauser arrived on
the scene.  (D. SMJ at 8.)  Officer Muehlhauser then searched
Ms. Guerrero and checked her handcuffs to ensure they were
secure.  *Id.*  The parties dispute whether Officer Muehlhauser
tightened Ms. Guerrero's handcuffs and whether Officer Moore
ordered Officer Muehlhauser to do so.  (D. SMJ at 8; P. Opp. at

5.)  The parties also dispute whether Officer Moore ordered Ms.
Guerrero to lean farther back while she was in the police car in
order to tighten her handcuffs.  (D. SMJ at 8-9.)

### v.  Detention and Injuries

Mr. and Ms. Guerrero were taken to the Adult Detention
Center and detained for several hours and a day and a half,
respectively.  (D. SMJ at 9.)  Both suffered minor injuries from
the incident.  Ms. Guerrero suffered a two-inch abrasion on her
left shoulder, a one-inch red mark on her right forearm, and
pain in her shoulder.  (P. Opp. at 5.)  Ms. Guerrero also
suffered emotional trauma from the incident.  (P. Opp. at 6.)
Mr. Guerrero had his eyes checked at a clinic and suffered
nervousness following the event.  *Id.*  The Guerrero children,
Plaintiffs J. Guerrero, Jr., M. Guerrero, and K. Guerrero,
suffered emotional and psychiatric injury, feelings of shock and
helplessness and fear.  (P. Opp. at 6-7.)

The Commonwealth of Virginia charged Mr. Guerrero with
obstruction of justice, and he was found not guilty.  (P. Opp.
at 7.)  Ms. Guerrero was charged with assault and battery of a
law enforcement officer and obstruction of justice.  *Id.*  The
obstruction of justice charge was dismissed, and the assault and
battery charge has not been prosecuted to date.  *Id.*

vi.     The County Resolution

The parties dispute the facts surrounding a County resolution concerning illegal immigration enforcement. According to Plaintiffs, on July 10, 2007, the Prince William County Board of Supervisors passed a resolution (the "Resolution") mandating county police officers to inquire into the citizenship or immigration status of any person detained in violation of state law or a municipal ordinance.  (P. Opp. at 9.)  In response to the County's desire to curtail what it perceived to be an "illegal immigrant" problem, the Department created a unit devoted to investigating crimes involving illegal aliens and, on the County's direction, enacted a policy whereby officers could inquire as to immigration status following an arrest.  (P. Opp. at 10.)  Defendants, however, contend that while the Resolution was passed in July 2007, its directives were not implemented by the Department until the spring of 2008. (P. SMJ at 10.)

B.     Procedural Background

Plaintiffs filed a Second Amended Complaint on July 2, 2010 (the "Complaint").  On September 10, 2010, Defendants filed with this Court their Renewed Motion for Summary Judgment[2] [Dkt. 107], and Plaintiffs filed a Motion for Partial Summary Judgment

_____

[2] Defendants' Memorandum in Support [Dkt. 108] will be referred to as "D. SMJ."  Plaintiffs' Opposition [Dkt. 130] will be referred to as "P. Opp." Defendants' Reply [Dkt. 137] will be referred to as "D. Reply".  Likewise, Plaintiffs' Memorandum in Support [Dkt. 117] will be referred to as "P. SMJ.", Defendants' Opposition [Dkt. 124] will be referred to as "D. Opp.", and Plaintiffs' Reply [Dkt. 136] will be referred to as "P. Reply".

[Dkt. 112].  On September 22, 2010, Plaintiffs filed their
Opposition to Defendants' Renewed Motion for Summary Judgment
[Dkt. 130], and Defendants filed their Opposition to Plaintiffs'
Motion for Partial Summary Judgment.  [Dkt. 124.]  On October 1,
2010, Defendants filed their Reply to Plaintiffs' Opposition
[Dkt. 137.], and Plaintiffs' filed their Reply in Support of
their Motion for Partial Summary Judgment.  [Dkt. 136.]  These
motions are now before the Court.

## II.  Standard of Review

Summary judgment is appropriate only if the record
shows that "there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter
of law."  Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps.
& Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations
omitted).  The party seeking summary judgment has the initial
burden of showing the absence of a material fact.  *Celotex Corp.
v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of
material fact exists "if the evidence is such that a reasonable
jury could return a verdict for the non-moving party."
*Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made
and supported, the opposing party has the burden of showing that
a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The party
opposing summary judgment may not rest upon mere allegations or
denials.  Rather, it "must set forth specific facts showing that
there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248
(quotation omitted).

Unsupported speculation is not enough to withstand a
motion for summary judgment.  *See Ash v. United Parcel Serv.,
Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986).  Summary judgment is
appropriate when, after discovery, a party has failed to make a
"showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will
bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.
In reviewing the record on summary judgment, "the court must
draw any inferences in the light most favorable to the non-
movant" and "determine whether the record taken as a whole could
lead a reasonable trier of fact to find for the non-movant."
*Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th
Cir. 1991) (citations omitted).

### III.  Analysis

Defendants argue that they are entitled to qualified
immunity and, thus, summary judgment on all of Plaintiffs' §
1983 claims and that they are entitled to summary judgment on
all Virginia state law claims.  Plaintiffs argue that they are
entitled to partial summary judgment on Count I with respect to

the unlawful entry claim, and that in the alternative,
collateral estoppel precludes re-litigation of whether Officer
Moore's entry was unlawful.[3]  The Court will address these
arguments in turn.

### A.  Constitutional Claims under § 1983

Plaintiffs allege two Fourth Amendment violations:
unreasonable search and seizure and excessive force.  Defendants
claim that they are entitled to qualified immunity with respect
to these claims and, therefore, are entitled to summary
judgment.  Plaintiffs argue, with respect to the warrantless
entry claim under Count I, that because there was a violation of
clearly established constitutional law, they are entitled to
summary judgment.

### i.  Qualified Immunity

Qualified immunity protects government officials from
"liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights
of which a reasonable person would have known."  *Harlow v.
Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity
provides "an immunity from suit rather than a mere defense to
liability; and like an absolute immunity, it is effectively lost
if a case is erroneously permitted to go to trial."  *Mitchell v.
Forsyth*, 472 U.S. 511, 526 (1985).  "The qualified immunity

---

[3] Plaintiffs concede that any claims against those Defendants named as DOES
and ROES should be dismissed.

10

determination should normally be made at the summary judgment stage in the litigation." *Ware v. James City County*, 652 F. Supp. 2d 693, 702 (E.D. Va. 2009) (citing *Schultz v. Braga*, 455 F.3d 470, 476 (4th Cir. 2006). "Qualified immunity[, however,] does not override the ordinary rules applicable to summary judgment proceedings, nor does it give special substantive favor to the defense." *Henry v. Purnell*, -- F.3d --, No. 08-7433, 2010 WL 3720411, at *7 (4th Cir. Sept. 24, 2010) (internal quotation omitted). "Hence, [the Fourth Circuit's] longstanding instruction that courts 'reserve[ ] for trial' genuine issues of material fact relating to an 'officer's conduct or its reasonableness under the circumstances.'" *Id*. at *8 (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

In *Saucier v. Katz*, the Supreme Court set forth a two-pronged inquiry for determining whether the defense of qualified immunity will apply. 533 U.S. 194, 201-02 (2001). First, a district court determines whether, "[t]aken in the light most favorable to the party asserting the injury," the facts alleged by that party "show the officer's conduct violated a constitutional right." *Id*. at 201. Second, if a constitutional violation did occur, the court then explores "whether the right was clearly established." *Id*. at 202. Qualified immunity, then, is "a doctrine which shields government actors from liability if they establish either that (1) the plaintiff's

allegations fail to make out a violation of a constitutional right, or (2) the right at issue was not clearly established at the time of the alleged misconduct." *Purnell*, 2010 WL 3720411, at *7.

The Court notes that the sequence of the two-step inquiry required by *Saucier* is no longer mandatory. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009). Thus, the Court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818.

A right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (internal quotation marks omitted). "That is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope*, 536 U.S. at 739. "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*. at 741. In making the "clearly established" inquiry, then, a court "ascertain[s] 'whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law.'" *Meeker v. Edmundson*, 415 F.3d 317, 323 (4th

Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Moreover, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established[.]" *Saucier*, 533 U.S. at 202 (internal citations omitted). The purposes of this clearly established inquiry is "to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 at 206.

As the Supreme Court has stated, "[a]s the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Court has made clear "that the *Harlow* standard . . . gives ample room for mistaken judgments." *Id*. at 343. For purposes of the clearly established inquiry, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 195.

ii.    Count I: Warrantless Entry

Count I of Plaintiffs' Complaint alleges unreasonable searches and seizures in violation of the Fourth Amendment to the United States Constitution. Plaintiffs direct this claim against Defendants Officers Moore, Potes, Hurley, and Caplan, in their official and individual capacity, and against the County and Department Police Chief Charlie T. Deane, in his official

13

capacity. Plaintiffs' allege that both the officers' entry into the Guerrero home and the subsequent arrests of Mr. and Ms. Guerrero violated the Fourth Amendment, as unlawful searches and seizures, respectively. Defendants argue that they are entitled to qualified immunity as to these alleged Constitutional violations. Plaintiffs move for summary judgment as to the warrantless entry claim under Count I.

a.   Exceptions to the Warrant Requirement

The Fourth Amendment forbids unreasonable searches and seizures. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). Thus, "[i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* at 590. "That line . . . must be not only firm but also bright." *Kyllo v. United States*, 533 U.S. 27, 40 (2001). The Supreme Court has "made clear that any physical invasion of the structure of the home, 'by even a fraction of an inch,' [is] too much, and there is certainly no exception to the warrant requirement for the officer who barely cracks open the front door." *Id.* at 37 (internal citations omitted). Thus, searches and seizures conduct in absence of a valid warrant "are per se unreasonable under the Fourth Amendment--subject only to a few specifically

14

established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967).  Relevant here, among these exceptions are exigent circumstances and consent.  *Payton*, 445 U.S. at 590; *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

Though the parties dispute whether Ms. Munguia lived at the Guerrero residence on November 24, 2007, the Court, as discussed below, finds that Officer Moore was not executing an arrest or search warrant carrying with it the limited authority to enter the Guerrero home.  Thus, whether Ms. Munguia was a co-resident in the Guerrero home is immaterial.  Absent a valid warrant, "[i]t is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth*, 412 U.S. at 219.  The issue with respect to the first prong of the qualified immunity inquiry, then, is whether one of the well-delineated exceptions to the warrant requirement is present in this case.

b.  Officer Moore's Initial Entry

Plaintiffs allege that Defendant Officer Moore unlawfully entered the Guerrero home without a warrant and without the presence of exigent circumstances.  (Comp. at ¶ 58.) Defendants counter that Officer Moore could lawfully enter in

absence of a warrant, because of the consent and exigent circumstances exceptions to the warrant requirement (D. SMJ at 12; D. Opp. at 8.)  Both parties have moved for summary judgment on the warrantless entry claim under Count I as to Officer Moore.  (P. SMJ at 1; D. SMJ at 11.)

### 1.  Officer Moore was not Executing a Warrant

As an initial matter, it is undisputed that when Officer Moore arrived at the Guerrero residence, he was not armed with an arrest or search warrant.  Rather, he was there to serve a *summons* on Ms. Munguia requiring her to appear before the Juvenile and Domestic Relations District Court for a "Class 3 Misdemeanor" charge for failing to assist the school in enforcing the standards of compulsory school attendance as a parent of a student enrolled in a public school pursuant to Va. Ann. Code § 22.1-279.3--in short, a truancy summons--not an arrest warrant.  (D. Ex. A1, A2.)  *See* Va. Ann. Code § 22.1-263 ("Any person violating the provisions of . . . the parental responsibility provisions relating to compulsory school attendance included in § 22.1-279.3, shall be guilty of a Class 3 misdemeanor.").  As the document was not by its terms an arrest warrant, the Court examines whether it was the functional equivalent of an arrest warrant for Fourth Amendment purposes.

In Virginia, a police officer may, in limited instances, effect a custodial arrest of the subject of a summons

for a person accused of committing a Class 3 Misdemeanor.  As
set forth in the Code of Virginia, when a person commits a Class
3 Misdemeanor in the presence of an officer, "if any such person
shall fail or refuse to discontinue the unlawful [Class 3
Misdemeanor], the officer may [arrest the suspect without a
warrant]."  Va. Code Ann. § 19.2-74(A)(2); *see also Spiers v.
Sydnor*, 3 F. App'x 176, 179 (4th Cir. 2001) ("[I]n the case of
certain minor violations, such as Class [3] misdemeanors, the
officer generally is limited to issuing a summons for the
offense."); *cf. Lovelace v. Commonwealth*, 258 Va. 588, 596
S.E.2d 856, 860 (1999) (explaining that under § 19.2-74, the
"'arrest' . . . is effected by issuing a citation or summons
rather than taking the suspect into custody").  Additionally, if
the subject of a summons refuses to give the required "written
promise to appear under the provisions of [§ 19.2-74]" he or she
"shall be taken immediately by the arresting or other police
officer before a magistrate or other issuing authority having
jurisdiction."  Va. Code Ann. § 19.2-74(A)(3).

        In this case, at the time of Officer Moore's initial
entry into the Guerrero home, Ms. Guerrero had committed no
crime, so the exception for arresting a suspect committing a
Class 3 Misdemeanor does not apply.  (D. SMJ at 3.)  Nor was Ms.
Guerrero the subject of the summons.  Ms. Munguia, the subject
of the summons, was not at the Guerrero residence, and thus

could not have possibly refused to give the written promise to appear, only after which Officer Moore could have taken her into custody. (D. SMJ at 3.) On the basis of the summons itself, without more, Officer Moore could not arrest anyone. Thus, the Court finds that the truancy summons, standing alone, did not grant Officer Moore the authority to enter the Guerrero home to effectuate an arrest.

Moreover, though not binding on this Court, the Court finds the 2003 Opinion issued by the Office of the Attorney General of Commonwealth of Virginia (the "AG") and the cases cited therein to be instructive on this very issue. *Warren v. Baskerville,* 233 F.3d 204, 207 n.2 (4th Cir. 2000) (citing *City of Virginia Beach v. Virginia Restaurant Assoc.*, 341 S.E.2d 198, 201 (1986) (holding that while the Virginia Attorney General's opinion is not binding, it provides persuasive authority entitled to due consideration)). In its Opinion No. 03-064, the AG stated that a summons that "would commence misdemeanor proceedings against the person served," is not "for all purposes, an adequate substitute for an arrest of a search warrant." 2003 Va. AG LEXIS 59 (2003 Op. Atty Gen. Va. No. 03-064). Further, the AG noted that "[t]he issuance of a misdemeanor summons does not constitute a judicial determination that the right of privacy in a home is required to yield to an officer's purpose." *Id.* (citing *Johnson v. United States*, 333

U.S. 10, 14 (1948)). To arrive at this conclusion, the AG

considered similar cases considered by other courts that held,

absent exigency, that "an officer may not enter private premises

without a warrant in order to arrest on a charging instrument or

to serve papers." *Id.*

Officer Moore's reasonable belief as to whether the

summons conferred upon him the legal authority to enter the

Guerrero home does not convert the summons into an arrest

warrant for purposes of addressing whether his conduct violated

the Fourth Amendment protection against unreasonable searches

and seizures. Because Officer Moore was not executing a

warrant, but rather serving a summons, the Court must now

determine whether one of the well-delineated exceptions to the

warrant requirement is present in this case. *Schneckloth*, 412

U.S. at 219.

## 2. Implied consent

Defendants first argue that the consent exception to

the warrant requirement is applicable to Officer Moore, because

Ms. Guerrero "impliedly invited" Officer Moore to "step[]

forward onto [her] threshold." (D. SMJ at 13.) As it is

undisputed that Ms. Guerrero did not expressly consent to

Officer Moore's entry, the issue, then, is whether the typical,

reasonable person in Ms. Guerrero's position would have

understood themselves to be giving Officer Moore implied consent to his entrance into the Guerrero home.

The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id*. at 251. "The question whether the [a party's] consent [] was in fact voluntary [], express or implied, is to be determined by the totality of all the circumstances, and is a matter which the Government has the burden of proving." *United States v. Mendenhall*, 446 U.S. 544, 557 (1980) (internal citations omitted). "There is no question that consent to search can be implied from a person's words, gestures, or conduct." *United States v. Moreland*, 437 F.3d 424, 429 (4th Cir. 2006) (citations omitted). "'[M]agic words' (such as 'yes') are not necessary to evince consent because 'the key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect.'" *United States v. Bynum*, 125 F. Supp. 2nd 772, 783 (E.D. Va. 2000), *rev'd on other*

*grounds*, 293 F.3d 192 (4th Cir. 2002) (citing *United States v. Stewart*, 93 F.3d 189, 192 (5th Cir. 1996)).

This Court explained in *Bynum*, a case cited by Defendants for their implied consent argument, that "[o]n occasion, non-verbal consent to searches evinced by gesture has been sustained." *Bynum*, 125 F. Supp. 2d at 783. The *Bynum* decision went on to examine a number of cases in considering when a party gives implied, non-verbal consent to a search, and determined that "[t]hose decisions teach that, in examining the totality of the circumstances to determine whether a reasonable officer would interpret a gesture or conduct as consent, it is necessary to consider the question posed by, and the actions of, the law enforcement officers to which the defendant's non-verbal conduct was a response." *Id.* at 783-84.

It is undisputed that Ms. Guerrero told Officer Moore that Ms. Munguia was not present in the Guerrero residence, and that Ms. Guerrero offered to take his business card. (D. SMJ at 3; P. Opp. at 1.) The parties dispute, however, what happened immediately after. Defendants state that Ms. Guerrero took a step backward into her house and opened the door further, and that while Officer Moore was reaching for his business card, he stepped forward onto the threshold of the home. (D. SMJ at 3.) Plaintiffs state that Ms. Guerrero began to close the door after telling Officer Moore that Ms. Munguia was not at the Guerrero

home, believing their conversation to have ended.  (P. Opp. at 12.)  Defendants do not contend that Officer Moore affirmatively asked to be let in to the Guerrero home.

Taking the facts in the light most favorable to the Plaintiffs, Defendants have not made a showing that no reasonable juror could return a verdict for Plaintiffs with respect to whether Ms. Guerrero impliedly consented to Officer Moore's entry into the Guerrero home.  The totality of the circumstances does not show, for purposes of granting summary judgment to the Defendants, that the typical reasonable person would have understood the exchange between the Officer Moore and Ms. Guerrero to mean that she consented to his entrance into her home.  *Jimeno*, 500 U.S. at 251.  The evidence at the least shows that all Ms. Guerrero did was ask Officer Moore for his business card, and it is not objectively reasonable to equate asking for one's business card to inviting one to enter one's home. Moreover, viewed in the light most favorable to the Plaintiffs, the evidence shows that Ms. Guerrero began to close the door; certainly, that is no invitation to enter.  Taken together, the facts do not support Defendants' contention that no reasonable juror could find that Officer Moore was objectively reasonable in believing Ms. Guerrero's words, gestures, or conduct gave consent to his entrance into her home.

With respect to Plaintiffs' motion for summary judgment, taking the evidence in the light most favorable to the Defendants, *i.e.*, that Ms. Guerrero took a step backward into her house and opened the door further, the question is a more difficult one. Because the disputed facts surrounding the initial exchange are material to whether Officer Moore's belief was reasonable, the Court finds Plaintiffs have not made a showing that no reasonable juror could return a verdict for Defendants with respect the whether Ms. Guerrero impliedly consented to Officer Moore's entry into the Guerrero home.

3. <u>Implied Consent and the Second Prong of the Qualified Immunity Standard</u>

Having found a triable issue as to whether Ms. Guerrero gave Officer Moore implied consent to enter the Guerrero home, the Court now turns to the second prong of the qualified immunity standard, *i.e.*, whether the right was clearly established. As discussed above, a right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope,* 536 U.S. at 739. The first step in the analysis is to define the right allegedly violated at the appropriate level of specificity. Defining the right as "to be free from warrantless searches in absence of certain well-accepted exceptions" is too general. The Court finds the proper

specificity to be whether it was sufficiently clear that an officer cannot enter a home on the basis of consent unless an objectively reasonable person would believe he or she had been given consent. On this basis, Officer Moore should have known his conduct, *i.e.*, entering on the basis of Ms. Guerrero's alleged implied consent, was at least questionable, if not unlawful. Therefore, the Court finds that the right alleged to be violated was clearly established for purposes of the second prong of the qualified immunity inquiry.

### 4.   Exigent Circumstances

Defendants next argue that Officer Moore's entry into the Guerrero home was lawful, because exigent circumstances were present permitting his entry in absence of a warrant. Specifically, Defendants argue that when Ms. Guerrero slammed the door on Officer Moore's foot, he had probable cause to believe she had committed felony assault and battery on him, and therefore he was pursuing a fleeing felon in hot pursuit. (D. SMJ at 13; D. Reply at 16-17.)

The presence of exigent circumstances is a well-established exception to the warrant requirement. *See*, *e.g.*, *United States v. Cephas*, 254 F.3d 488, 494 (4th Cir. 2001) ("[A]n exception to the warrant requirement is made when certain exigent circumstances exist."). "The existence of exigent circumstances must be determined *as of the moment of the*

*warrantless entry* of the officers onto the premises of [the subject of the search]." *United States v. Reed*, 935 F.2d 641, 643 (4th Cir. 1991) (citing *Arkansas v. Sanders*, 442 U.S. 753, 763 (1979) (emphasis added)).  In determining whether an exigency existed when the search commenced, the Court inquires whether the circumstances would cause law enforcement officers to form an "objectively reasonable belief that an emergency existed that required immediate entry to render assistance or prevent harm to persons or property within." *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992).  "Exigent circumstances vary from case to case, and a determination of the issue is of necessity fact-specific." *Osabutey v. Welch*, 857 F.2d 220, 224 (4th Cir. 1988).  Examples of such emergencies include, but are not limited to, "risk of danger to the police or to other persons inside or outside the dwelling," and "hot pursuit of a fleeing felon." *United States v. Moses*, 540 F.3d 263, 270 (4th Cir. 2008); *Welsh v. Wisconsin*, 466 U.S. 740, 750 (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976)).

With respect to the parties' cross motions for summary judgment on Count I as to Officer Moore, exigent circumstances must exist as of the moment of the warrantless entry, *i.e.*, stepping onto the threshold.  At the time Officer Moore stepped forward into the threshold of the Guerrero home, however, Ms. Guerrero had not yet charged forward and hit Officer Moore in

the chest. (D. SMJ at 3.) The Court, therefore, finds that no
reasonable juror could return a verdict that exigent
circumstances existed as of that moment.

5. <u>Collateral Estoppel as to Officer
Moore's Entry</u>

Plaintiffs argue, in the alternative, that collateral
estoppel precludes relitigation of whether Officer Moore's entry
into the Guerrero home was unlawful, because the Prince William
County General District Court determined that it was. (P. SMJ
at 19.) The Prince William County General District Court, in
*Commonwealth of Virginia v. Esperanza Guerrero*, January 25,
2008, dismissed the misdemeanor charge against Ms. Guerrero,
because the court found Officer Moore's entry to be unlawful.
(P. Ex. J at 84:12-15.) Thus, the issue is whether that ruling
has preclusive effect before this Court on this Officer Moore's
initial entry.

"The collateral estoppel effect of the Virginia
court's decision is determined by Virginia law." *Kane v.
Hargis*, 987 F.2d 1005, 1008 (4th Cir. 1993) (citing 28 U.S.C. §
1738; *Allen v. McCurry*, 449 U.S. 90, 96 (1980)); *see also
Capital Hauling, Inc. v. Forbes*, 75 F. App'x 170, 171 (4th Cir.
2003) (per curiam) ("When determining whether collateral
estoppel arises from a prior state court judgment, federal
courts apply the law of the state in whose courts the prior
judgment was entered."). Under Virginia law, "[f]or the

doctrine [of collateral estoppel] to apply, the parties to the
two proceedings, or their privies, must be the same."
*TransDulles Center, Inc. v. Sharma*, 252 Va. 20, 22-23, 472
S.E.2d 274 (1996); *see also Loudoun Hosp. Center v. Stroube*, 50
Va. App. 478, 492, 650 S.E.2d 879, 886 (2007) ("[B]efore the
doctrine of collateral estoppel may be applied, four
requirements must be met: (1) the parties to the two proceedings
must be the same.") (quoting *Whitley v. Commonwealth*, 260 Va.
482, 489, 538 S.E.2d 296, 299 (2000)).

  In this case, Officer Moore was not a party to the
prior proceeding that Plaintiffs claim bars relitigation of the
issue of whether his entry to the Guerrero home was unlawful.
Ms. Guerrero and the Commonwealth of Virginia were the only
parties to that action.  Therefore, the Court finds that
Virginia collateral estoppel law does not bar the relitigation
of that issue here.

  For the reasons set forth above, the Court denies both
parties' motions for summary judgment as to Count I with respect
to Officer Moore's initial entry into the Guerrero home.

   c. Officers Potes, Hurley, and Caplan's
    Warrantless Entry

  Plaintiffs allege that Defendants Potes, Hurley, and
Caplan unlawfully entered the Guerrero home.  (Complaint at ¶
58.)  Defendants, in response, argue that Officers Potes,
Hurley, and Caplan entered lawfully in the presence of exigent

27

circumstances.  Both parties have moved for summary judgment on
the warrantless entry claim under Count I as to Officers Potes,
Hurley, and Caplan.

As stated above, the presence of exigent circumstances
is a well-established exception to the warrant requirement.
*See, e.g.*, *Cephas*, 254 F.3d at 494.  One well-established
example of exigent circumstances is risk of danger to the
police.  *Moses*, 540 F.3d at 270 (internal citations omitted).
The existence of exigent circumstances is measured at the time
of the warrantless entrance and is determined by whether the
circumstances would cause law enforcement officers to form an
"objectively reasonable belief that an emergency existed that
required immediate entry to render assistance or prevent harm to
persons or property within."  *Reed*, 935 F.2d at 643 (internal
citations omitted); *Moss*, 963 F.2d at 678.

With respect to Defendants' motion for summary
judgment on Count I as to Officers Potes, Hurley, and Caplan,
taking the facts in the light most favorable to the Plaintiffs,
Defendants have made a showing that no reasonable juror could
return a verdict for Plaintiffs as to the presence of exigent
circumstances for the officers' initial entry into the Guerrero
home.  At the time Officers Potes, Hurley, and Caplan arrived at
the scene, they each saw Officer Moore's leg caught between the
door and the door jam, and that Moore "was holding on for dear

life, [to] prevent[] further injury to his leg." (Caplan Dep. at 78:20-21.) While Officer Moore admits he had the opportunity to remove his foot from the door, this subjective belief does not negate that Officers Potes, Hurley, and Caplan could have objectively and reasonably believed that an emergency existed that required immediate entry to render assistance or prevent harm to Officer Moore. (Moore Dep. at 134:22-135:2.) Accordingly, Officers Potes, Hurley, and Caplan are entitled to qualified immunity on that claim.

Plaintiffs cite *Minnesota v. Olson*, 495 U.S. 91, 101 (1990), for the proposition that if Officers Potes, Hurley, and Caplan believed Ms. Guerrero should be arrested, nothing prohibited at least one of the from leaving the scene and obtaining a proper arrest warrant. (P. Opp. at 16.) *Olson*, however, is inapposite; in *Olson*, there was no physical assault being committed on a police officer. Rather, the police officers there went to a house to arrest a suspect whom they had been told was within. *Id*. at 95. They surrounded the house and proceeded to enter without a warrant in order to arrest that suspect. *Id*. At no time was any police officer physical attacked in any way.

For these reasons, the Court also finds that with respect to Plaintiffs' motion for summary judgment as to Officers Potes, Hurley, and Caplan's warrantless entry under

Count I, Plaintiffs have not made a showing that no reasonable juror could return a verdict for Defendants as to the presence of exigent circumstances on the officers' initial entry into the Guerrero home, and, therefore, Plaintiffs' motion is denied.

### iii.   Count I: Warrantless Seizures

Plaintiffs next allege that Defendants Moore, Potes, Hurley, and Caplan violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizures when the officers unlawfully seized Mr. and Ms. Guerrero without probable cause. (Complaint at ¶ 59; P. Opp. at 16.)  Defendants, in response, argue that Officers Moore, Potes, Hurley, and Caplan each had probable cause to believe a crime was being committed in his presence, thereby permitting a seizure in absence of a warrant. Only Defendants have moved for summary judgment on the unreasonable seizure claim under Count I as to Officers Moore, Potes, Hurley, and Caplan, arguing that they are entitled to qualified immunity on that claim.  (D. SMJ at 20-21.)

The Supreme Court has held that the Fourth Amendment's protection against unreasonable seizures includes seizure of the person.  *California v. Hodari D.*, 499 U.S. 621, 624 (1991).  "It is well-settled under Supreme Court precedent that a warrantless arrest is reasonable under the Fourth Amendment [] 'where there is probable cause to believe that a criminal offense has been or is being committed.'"  *Ware*, 652 F. Supp. 2d at 703 (citing *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).  Probable cause

to make a warrantless arrest exists when the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person . . . in the circumstances shown, [to conclude] that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). It is also well-settled that "[w]hether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the [arresting] officer[s], and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992). "Although probable cause demands 'more than mere suspicion, . . . evidence sufficient to convict is not required.'" *Ware*, 652 F. Supp. 2d at 703 (quoting *Taylor v. Waters*, 81 F.3d 429, 433 (4th Cir. 1996). Thus, "if a person is arrested when no reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person, a violation of a clearly established Fourth Amendment right . . . ensues." *Rogers v. Pendleton*, 249 F.3d 279, 290 (4th Cir. 2001).

Defendants argue that Officers Moore, Potes, Hurley, and Caplan each had probable cause to believe that the crimes of assault and battery and/or obstruction of justice were being committed in their presence. The Court, then, must examine the

elements of these crimes and determine whether a "reasonable officer could believe, in light of the contours of the offense at issue, that probable cause exists to arrest that person." *Rogers*, 249 F.3d at 290.

In Virginia, simple assault or assault and battery on a police officer is a Class 6 felony. Va. Code Ann. § 18.2-57(C). Assault "occurs when an assailant engages in an overt act intended to inflict bodily harm and has the present ability to inflict such harm or engages in an overt act intended to place the victim in fear or apprehension of bodily harm and creates such reasonable fear or apprehension in the victim." *Clark v. Commonwealth*, 279 Va. 636, 641, 691 S.E.2d 786, 789 (2010). "To sustain a conviction for battery, the Commonwealth must prove a 'wil[l]ful or unlawful touching' of another." *Parish v. Commonwealth*, 56 Va. App. 324, 330, 693 S.E.2d 315, 319 (Va. App. 2010) (quoting *Wood v. Commonwealth*, 149 Va. 401, 404, 140 S.E. 114, 115 (1927)). It is not necessary that the touching result in injury to the person. *Id*. "It is sufficient if it does injury to the [victim's] mind or feelings." *Id*. (quoting *Wood*, 149 Va. at 405, 140 S.E. at 115).

The relevant Virginia crimes of obstruction of justice is set forth in subsections A and B of the Virginia Code § 18.2-460.[4] One violates subsection A when one "without just cause,

---

[4] Subsection C is inapplicable here. *See Washington*, 273 Va. at 628, 643 S.E.2d at 490.

knowingly obstructs a law-enforcement officer in the performance of his duties." *Washington v. Commonwealth*, 273 Va. 619, 624 643 S.E.2d 485, 488 (2007) "In contrast, a person violates subsection B by using threats or force to knowingly attempt to intimidate or impede a law-enforcement officer lawfully engaged in the performance of his duties. A violation of either of these subsections is deemed a Class 1 misdemeanor." *Id.*

a. Warrantless Seizure of Ms. Guerrero

1. Officer Moore

The Court will first examine whether a reasonable officer in Officer Moore's position could have believed that probable cause exists to arrest Ms. Guerrero on any of assault, battery, or obstruction of justice. Defendants claim that when Ms. Guerrero closed the door on Officer Moore, he could reasonably believe she committed assault and battery and/or obstruction of justice. (D. SMJ at 19.) Plaintiffs argue that Ms. Guerrero could not be liable for any crime, because "Virginia law is clear that a property owner may use force to expel a trespasser." (P. Opp. at 17.); citing *Brown v. Commonwealth*, 27 Va. App. 111, 116, 497 S.E.2d 527, 530 (Va. App. 1998). *Brown*, however, addresses resisting an unlawful arrest and does not address trespass; the word "trespass" does not even appear in the case. Nonetheless, Virginia common law "has long recognized the right of a landowner to order a trespasser to leave, and if the trespasser refuses to go, to

33

employ proper force to expel him, provided no breach of the peace is committed in the outset." *Pike v. Commonwealth*, 24 Va. App. 373, 375-76, 482 S.E.2d 839, 840 (Va. App. 1997) (citing *Montgomery v. Commonwealth*, 99 Va. 833, 37 S.E. 841, 842 (1901)).

As an initial matter, when Ms. Guerrero closed to door on Officer Moore's leg, he had probable cause to believe she had committed a battery on him, as that crime requires only unlawful touching of another, regardless of injury. Assuming, *arguendo*, that Officer Moore's initial entry was unlawful, the question is whether such a battery was excused by the defense set forth in *Pike*. Significantly, that defense first requires that the defending party order the trespasser to leave and then that the trespasser refuse to do so. Taking the evidence in the light most favorable to the Plaintiffs, *i.e.*, that Ms. Guerrero never hit or shoved Officer Moore, it is undisputed that Ms. Guerrero did not order Officer Moore to leave before closing the door on his leg, though she did so afterwards. Though the facts immediately following the initial entry are in dispute, that original exchange of Officer Moore's stepping onto the threshold and Ms. Guerrero closing the door on his leg is undisputed. Thus, Officer had probable cause to conclude that Ms. Guerrero had committed a battery on him, and because she did not first

ask him to leave before doing so, the *Pike* defense does not apply.

Plaintiffs cite *Strutz v. Hall*, 308 F.Supp.2d 767, 781 (E.D. Mich. 2004), for the argument that the power to make a warrantless arrest of a suspect when an officer believes that person has committed a crime in his or her presence "is not the wholly distinct power to enter a private home without a warrant, whether to effect an arrest or for some other purpose." While this argument may bear on whether Officer Moore's entry into the Guerrero home was lawful, which has been addressed at length above, it is not applicable to the lawfulness of Officer Moore's *seizure* of Ms. Guerrero. The lawfulness of a warrantless seizure is determined by whether the officer has probable cause to believe a crime has been committed in his presence for which he can make an arrest.

## 2. The Other Officers

As to the lawfulness of the warrantless seizure of Ms. Guerrero with respect to Officers Potes, Hurley, and Caplan, the issue, again, is whether they had probable cause to believe a crime was being committed in their presence. As officers arriving on the scene in response to a call for assistance, "they were not required to conduct an independent investigation of the facts to come to their own determination regarding whether probable cause existed. Such a requirement would be unworkable in the environments in which the police operate."

*Ware*, 652 F. Supp. 2d at 703.  Officers Potes, Hurley, and
Caplan were not required to make their own inquiry upon their
arrival, rather "[i]t is enough that [Officer Moore] told [them]
that he had probable cause to make an arrest, and that they had
no information that would cause them to question [his]
statement." *Id.; see also Wilson v. Kittoe*, 229 F. Supp. 2d
520, 537–38 (W.D. Va. 2002) (finding that a reasonable officer
who arrives on the scene would defer to another officer's
explanation of what transpired before his or her arrival).

It is undisputed that Officers Potes, Hurley, and
Caplan arrived in response to a request for additional units to
come to Officer Moore's assistance.  Officer Potes was the first
to arrive, with Officers Caplan and Hurley arriving immediately
thereafter.  (D. SMJ at 5).  When they arrived, they saw Officer
Moore in some form of altercation with Ms. Guerrero, and Officer
Moore told Officer Potes that Ms. Guerrero was under arrest.
*Id*.  Nothing in the record shows any reason for the officers to
question Officer Moore's statement.  Thus, Officers Potes,
Hurley, and Caplan had probable cause to believe that Ms.
Guerrero had committed a battery on Officer Moore, and therefore
could lawfully seize Ms. Guerrero in absence of a warrant.

b.   Warrantless Seizure of Mr. Guerrero

Defendants argue that the officers lawfully seized Mr.
Guerrero, because they had probable cause to believe that he was
obstructing justice.  (D. SMJ at 20.)  In Virginia, a person

commits the crime of obstruction of justice if he or she knowingly obstructs a police officer in the performance of his duties. *See Washington*, 273 Va. at 624, 643 S.E.2d at 488.

Here, after the officers entered the Guerrero home, Mr. Guerrero came out of a neighboring room and either "ran rapidly" or "walked fast" towards the officers who were effecting an arrest of Ms. Guerrero. (D. SMJ at 7.) As Mr. Guerrero approached the officers, he made some gestures with his hands, alternatively described as either "like he was trying to grab something" or "with his hand out" as if to show he was not holding anything. (D. SMJ at 7; P. Opp. at 17.) Once Mr. Guerrero was "very close" to the officers, Officer Potes used pepper spray on Mr. Guerrero and pushed him up the stairs. (D. SMJ at 7.) After escorting Ms. Guerrero outside, Officers Potes and Caplan returned inside to formally arrest Mr. Guerrero.

Taking the facts in the light most favorable to the Plaintiffs, Defendants have made a showing that there is no genuine issue of material fact as to whether Defendants had probable cause to believe Mr. Guerrero was about to commit the crime of obstruction of justice. In Virginia, one commits obstruction of justice when he or she knowingly obstructs a police officer in the performance of his duties. Here, Defendants could have reasonably believed that Mr. Guerrero knowingly came at the officers while they were in the

performance of their duties. That is all the elements require;
the officers need not have felt threatened, nor did Mr.
Guerrero's obstruction have to be significant. Thus, the Court
finds that Defendants had probable cause to arrest Mr. Guerrero
for misdemeanor obstruction of justice.

iv.  Constitutional Claims of the Guerrero
     Children

Defendants argue that the Guerrero children were not
seized and, therefore, do not have constitutional claims. (D.
Reply at 17.) One is seized when a reasonable person in his or
her position would not have believed he was free to leave.
*Hodari D*. 499 U.S. at 628. The Fourth Amendment, however,
"does not proscribe all state-initiated searches and seizures;
it merely proscribes those which are unreasonable." *Jimeno*, 500
U.S. at 250. "An action is 'reasonable' under the Fourth
Amendment, regardless of the individual officer's state of mind,
'as long as the circumstances, viewed objectively, justify [the]
action.'" *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006)
(quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)
(emphasis removed)).

While the Court finds that a reasonable person in the
Guerrero childrens' position would not have believed he or she
was free to leave, and thus the Guerrero children were seized,
their seizure was reasonable. In light of reasonable seizures
of Mr. and Ms. Guerrero, as addressed above, the circumstances,

viewed objectively, justified Officer Potes's brief seizure of
the Guerrero children for their safety while the officers
effected Ms. Guerrero's arrest.  Therefore, the Court grants
summary judgment with respect to the constitutional claims of
Plaintiffs J. Guerrero, Jr., M. Guerrero, and K. Guerrero.

v.      <u>Count II: Excessive Force</u>

Count II of Plaintiffs' Complaint alleges excessive
use of force in violation of the Fourth Amendment to the United
States Constitution.  Plaintiffs direct this cause of action
against all Defendants.  Specifically, Plaintiffs claim
Defendants used unreasonably excessive force in three instances:
when Officers Moore, Potes, Hurley, and Caplan forcibly entered
the Guerrero home, knocking Ms. Guerrero to the floor; when
Officer Potes used pepper spray on Mr. Guerrero; and when
Officer Muelhauser, on Officer Moore's direction, tightened Ms.
Guerrero's handcuffs.  (Comp. at ¶¶ 62-63.)  Defendants have
moved for summary judgment as to Count II, arguing that they are
entitled to qualified immunity on this claim.

When reviewing Plaintiffs' excessive force claim
against an officer effecting a seizure, the Court uses an
"objective reasonableness" standard in analyzing the officer's
action.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  This
standard carefully balances Fourth Amendment rights "against the
countervailing governmental interests at stake."  *Id*. at 396.
"To gauge objective reasonableness, a court examines only the

actions at issue and measures them against what a reasonable police officer would do under the circumstances." *Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir. 1994). "Subjective factors involving the officer's motives, intent, or propensities are not relevant." *Id.* at 173. Further, the "reasonableness" of a use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

In making this inquiry, the Court takes into consideration that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 397. *Graham* provides three factors for the Court to consider when inquiring into the objective reasonableness: (1) "the severity of the crime"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (internal citation omitted). The thrust of *Graham*, then, is that an officer may be entitled to qualified immunity who reasonably, but mistakenly, believed the circumstances justified using more force than in was needed in hindsight.

### a. Knocking Ms. Guerrero to the Floor

Plaintiffs allege Officers Moore, Potes, Hurley, and Caplan unreasonably used excessive force against Mrs. Guerrero when they forcibly entered the Guerrero home, knocking her to the floor. Applying the *Graham* factors, a reasonable officer in Defendants' position would have believed the circumstances justified the amount of force used in arresting Ms. Guerrero. Viewed from the perspective of a reasonable officer on the scene, Defendants reasonably believed Ms. Guerrero had committed battery on a police officer, was posing a threat to that police officer's safety, and was resisting an arrest for which the officer had probable cause.

### b. Pepper Spraying of Mr. Guerrero

Plaintiffs next allege Officer Potes used excessive force when he deployed pepper spray on Mr. Guerrero. Judged from the perspective of a reasonable officer on the scene, Officer Potes could have believed that Mr. Guerrero posed immediate threat to the safety of the officers and, thus, Officer Potes was justified in his use of pepper spray. Mr. Guerrero was coming towards the officers in a scene that was tense and in flux, as the officers had not yet secured the scene and arrested Ms. Guerrero. A reasonable officer in Officer Potes's position could have believed Mr. Guerrero posed an immediate threat to the safety of the officers and, therefore, believed he was justified using that amount of force.

41

Plaintiffs cite *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001), in support of their excessive force claim. That case, however, is distinguishable in two significant ways. The officers in *Park* had secured the scene and had detained the parties before deploying pepper spray and the spray was deployed twice at a range of approximately 18 inches on a handcuffed subject. *Id.* at 848. Here, the officers had not yet secured the scene, which was tense, uncertain, and still evolving. The parties had not yet been detained, and it is undisputed that Mr. Guerrero was walking toward the officers when Officer Potes deployed pepper spray on Mr. Guerrero from a distance of "less than five feet." (Potes Dep. at 113:9.)

Plaintiffs also argue that Officer Potes's history of using pepper spray, which he had used in five previous instances, and the Prince William County Police Department's force escalation police should weigh against the reasonableness of the force used. These factors, however, are subjective and specific to Officer Potes, where the excessive force inquiry is objective, from the perspective of the reasonable officer. Though in retrospect Officer Potes's use of pepper spray may have been mistaken, a reasonable officer in his position could have believed the circumstances justified the amount of force.

c.   Tightening the Handcuffs

Plaintiffs next allege that Officers Muelhauser and Moore used unreasonable force when they tightened Ms. Guerrero's

handcuffs.  Plaintiffs state that Ms. Guerrero suffered pain from the handcuffs, but do not allege that she suffered any injury from them.  (P. Opp. at 5.)  A reasonable officer in Defendants position would have believed the circumstances justified handcuffing Ms. Guerrero, and even taking as true that Defendants tightened Ms. Guerrero's handcuffs, no reasonable juror could find for Plaintiffs as to this claim.  *See Carter v. Morris*, 164 F.3d 215, 219 n. 3 (4th Cir. 1999) (finding that claim that handcuffs were too tight was too insubstantial to state a claim of excessive force under the Fourth Amendment).

For the reasons set forth above, the Court finds that Officers Moore, Potes, Hurley, Caplan, and Muehlhauser are entitled to qualified immunity as to and will grant Defendants' summary judgment motion with respect to Plaintiffs' Count II as to these Defendants.

B.   Counts I and II as to the County and Chief Deane

Plaintiffs allege the Constitutional violations in Counts I and II against Prince William County and Chief Deane, in his official capacity.  Prince William County and Chief Deane, according to Plaintiffs, enacted policies and practices that encouraged the violation of constitutional rights and failed to discipline and to properly investigate those violations in violation of § 1983.  Defendants move for summary judgment as to Prince William County and Chief Deane with respect to both Counts I and II.

In *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court established that a municipality or a local governing body may be sued for federal claims under § 1983 when its employee's unconstitutional actions are taken in the course of executing a governmental policy or custom. If "the constitutional deprivation is not an official act of the municipality," however, then "recovery lies only against the officer in his official capacity." *Moultrie v. Mitchell*, No. 93-1510, 1995 WL 24891, at *1 (4th Cir. Jan. 18, 1995) (citing *Hughes v. Blankenship*, 672 F.2d 403, 405-06 (4th Cir. 1982)).

To determine the liability of a municipality, courts must "(1) identify[] the specific policy or custom; (2) fairly attribute[] the policy and fault for its creation to the municipality; and (3) find[] the necessary affirmative link between identified policy or custom and specific violation" *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987), *cert. denied*, 484 U.S. 1027 (1988) (internal quotation marks omitted). Municipal liability "will attach only for those policies or customs having a 'specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Carter*, 164 F.3d at 218 (quoting *Spell*, 824 F.2d at 1390 (internal quotation marks omitted) (emphasis removed). As the

Fourth Circuit has stated, "the substantive requirements for establishing municipal liability for police misconduct are stringent indeed. The critical Supreme Court decisions have imposed this stringency in a deliberate effort to avoid the indirect or inadvertent imposition of forms of vicarious liability rejected in *Monell*." *Spell*, 824 F.2d at 1391.

With respect to Officer Deane, this Court has noted that "[d]ecisions in this circuit are divided as to whether a police chief or sheriff is a policymaker for § 1983 purposes." *Donaggio v. Arlington County, Va.*, 880 F.Supp. 446, 462 (E.D. Va. 1995) (surveying various cases). For present purposes, however, the Court will assume, *arguendo*, that Chief Deane could be a policymaker for § 1983 purposes.

a.   <u>Official Policy</u>

Plaintiffs allege that the Resolution contributed to an atmosphere of distrust between police officers and Hispanic citizens and encouraged police officers to take liberties with the constitutional rights of Hispanic residents. (P. Opp. at 23.) According to Plaintiffs, the only reasonable explanation for why Ms. Guerrero was treated inhumanely was because of the County's immigration policy. *Id*.

Even assuming that the Resolution's directives had been implemented on November 24, 2007, and even assuming those policies caused an atmosphere of distrust between police officers and Hispanic citizens, Plaintiffs have made no showing

of the necessary affirmative link between identified policy or custom and specific violation at issue here. Plaintiffs do not allege that any officer involved in this case ever inquired into the citizenship of any of the Guerreros or otherwise illustrated any concern as to whether the Guerreros were illegal immigrants. Moreover, in their initial exchange, the logical point at which to ask about immigrant status, Officer Moore did not ask Ms. Guerrero for any identification. (P. SMJ at 17.)

b. <u>Deliberate Indifference</u>

Plaintiffs argue that the County and Chief Deane's failure to investigate the use of force complaint regarding the incident at issue here constitutes "deliberate indifference" subjecting the County and Chief Deane to liability under § 1983. (P. Opp. at 24.) Under this claim, Plaintiffs effectively argue municipal liability attaches because of a "custom or usage" that resulted in the constitutional violations in Counts I and II.

In certain instances, municipalities may be liable under § 1983 without having directly authorized or implemented a policy that results in constitutional violations. *See Spell*, 824 F.2d at 1390. This "custom or usage" liability may attach when public employees "fall into patterns of unconstitutional conduct" that "become sufficiently widespread" that they assume the quality of "custom or usage." *Id.* Such a developed "custom or usage" may then become the basis of municipal liability, "but only if its continued existence can be laid to the fault of

municipal policymakers, and a sufficient causal connection between the 'municipal custom and usage' and the specific violation can then be established." *Id*. As set forth in *Spell*, "[m]unicipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." *Id*. at 1391. "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." *Id*. Municipal liability may attach when "either [] the municipal governing body itself, or [] municipal officials having final policymaking authority in municipal law enforcement matters" have the requisite inculpating knowledge. *Id*.

As the basis of their "custom or usage" claim, Plaintiffs state that Officer Moore was disciplined "several" times during his career with the Department, and "on at least a couple of occasions, he did not act professionally." (P. Opp. at 25.) As to Officer Potes "excessive" use of pepper spray, Plaintiffs state that the County and Chief Deane "appear" to ignore the five times Potes has used pepper spray. *Id*. With respect to Officer Moore, the Plaintiffs have not shown that any

of the "several" prior incidents were related to unconstitutional conduct. With respect to Officer Potes, even assuming each of the five uses of pepper spray was unconstitutional conduct, and assuming five instances qualifies as "sufficiently widespread," Plaintiffs have made no showing that the County and Chief Deane had even constructive knowledge of the practices, but have shown only that they "appear to have ignored" them.

For these reasons, the Court finds that the County and Chief Deane are entitled to qualified immunity as to Counts I and II, and the Court will grant Defendants' summary judgment motion with respect to Plaintiffs' Counts I and II as to the County and Chief Deane.

> ### C. Virginia State-Law Claims

The Court now turns to Plaintiffs state law claims. Plaintiffs have alleged five Virginia state law claims against Defendants Moore, Potes, Hurley, Caplan, and Muelhauser, in their official and individual capacities: Count III, assault, under Va. Code. § 18.2-57; Count IV, battery, under Va. Code. § 18.2-56; Count V, false arrest and imprisonment; Count VI, intentional infliction of emotional distress; and Count VII, negligent infliction of emotional distress. The Court will address each of these claims in turn. Only Defendants move for summary judgment with respect to the Virginia state-law claims.

###### i.  Counts III: Assault and Count IV: Battery

Plaintiffs allege that Officers Moore, Potes, Hurley, Caplan, and Muelhauser committed assault and battery when they forcibly entered the Guerrero home knocking Ms. Guerrero to the ground, used pepper spray on Mr. Guerrero, and tightened Ms. Guerrero's handcuffs.

In Virginia, "[a] plaintiff's assault or battery claim can be defeated by a legal justification for the act." *Ware*, 652 F. Supp. 2d at 712 (citing *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003)). Virginia law recognizes that police officers are legally justified in using reasonable force to execute their lawful duties. *See, e.g.*, *Pike v. Eubank*, 197 Va. 692, 90 S.E.2d 821 (1956). Accordingly, if reasonable force is used by police officers in execution of their lawful duties, they are immune from suit for such acts.

As discussed above, the Court finds that the officers used reasonable force in the instances at issue here. Thus, the Court finds that Officers Moore, Potes, Hurley, Caplan, and Muelhauser cannot be liable for assault and battery under Virginia law.

###### ii.  Count V: False Arrest and Imprisonment

Plaintiffs allege that Officers Moore, Potes, Hurley, Caplan, and Muelhauser falsely arrested and imprisoned Mr. and Ms. Guerrero.

In *DeChene v. Smallwood*, 226 Va. 475, 479, 311 S.E.2d 749 (1984), the Supreme Court of Virginia made clear that a law enforcement officer may not be held liable for a false arrest if the officer acted "'in good faith and with probable cause.'" *Id.* (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)). To establish the defense, an officer "need not allege and prove probable cause in the constitutional sense." *Id.* (internal quotation marks and citation omitted). Instead, the officer must allege and prove (i) that he believed in good faith that the arrest was lawful and (ii) that his belief was reasonable. *Id.*

As set forth above, this Court finds that the seizures of Mr. and Ms. Guerrero were lawful. Accordingly, Officers Moore, Potes, Hurley, Caplan, and Muelhauser cannot be liable for false arrest and imprisonment under Virginia law.

### iii.   Count VI: Intentional Infliction of Emotional Distress

Plaintiffs next allege that Officers Moore, Potes, Hurley, Caplan, and Muelhauser committed intentional infliction of emotional distress when they forcibly entered the Guerrero home, knocked down Ms. Guerrero, used pepper spray on Mr. Guerrero, and arrested them in front of the Guerrero children, elderly mother, and neighbors.

Actions for intentional infliction of emotional distress are disfavored in Virginia. *Ware*, 652 F. Supp. 2d at

50

714. To recover on this claim, Plaintiffs must prove that "the wrongdoer's conduct is intentional or reckless; the conduct is outrageous or intolerable; the alleged conduct and emotional distress are causally connected; and the distress is severe." *Veney v. Ojeda*, 321 F. Supp. 2d 733, 748 (E.D. Va. 2004) (citations omitted). Significantly, the outrageous conduct required to prove this tort has been described by the Supreme Court of Virginia as conduct that is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Russo v. White*, 241 Va. 23, 26, 400 S.E.2d 160 (1991) (internal citations omitted). With respect to the fourth element, severe emotional distress, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Id.* at 27 (internal citations omitted).

Here, Plaintiffs' claim must fail. Even taking the evidence in the light most favorable to Plaintiffs, Defendants conduct was not so extreme in degree as to go beyond all possible bounds of decency, to be regarded as atrocious and utterly intolerable in a civilized community. As set forth above, Defendants acted reasonably under the circumstances in effecting the seizures of Mr. and Ms. Guerrero. While their conduct was not ideal, it was not utterly intolerable in a

civilized society.  Therefore, Officers Moore, Potes, Hurley,

Caplan, and Muelhauser cannot be liable for intentional

infliction of emotional distress under Virginia law.

> iv.     Count VII: Negligent Infliction of Emotional
>         Distress

Plaintiffs next allege that Officers Moore, Potes,

Hurley, Caplan, and Muelhauser committed negligent infliction of

emotional distress based on the same conduct as the claim of

intentional infliction of emotional distress.

In *Hughes v. Moore*, 214 Va. 27, 34, 197 S.E.2d 214,219

(1973), the Supreme Court of Virginia held that "where conduct

is merely negligent, not willful, wanton, or vindictive, and

physical impact is lacking, there can be no recovery for

emotional disturbance alone."  The requisite physical injury for

a claim of negligent infliction of emotional distress must be

the "natural result of fright or shock proximately caused by the

defendant's negligence.  In other words, there may be recovery

in such a case if, but only if, there is shown a clear and

unbroken chain of causal connection between the negligent act,

the emotional disturbance, and the physical injury," *i.e.*, the

physical injury must be the result of emotional distress.  *Delk

v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 137–38, 523

S.E.2d 826 (2000) (internal citations and quotation marks

omitted.)

Plaintiffs have illustrated physical injury resulting from the incidents at issue in this case. Plaintiffs have also illustrated emotional injuries resulting from those incidents. Plaintiffs, however, have not shown that the physical injuries are a result of the emotional injuries, *i.e.*, they have not claimed any physical injury that is the natural result of emotional disturbance proximately caused by Defendants alleged negligence. Thus, Officers Moore, Potes, Hurley, Caplan, and Muelhauser cannot be liable for negligent infliction of emotional distress under Virginia law.

## IV.   Conclusion

For these reasons, the Court will grant in part and deny in part Defendants Renewed Motion for Summary Judgment. With respect to Plaintiffs' unreasonable search claim under Count I, Defendants' Motion is denied as to Defendant Moore and granted as to all other Defendants; with respect to Plaintiffs' unreasonable seizure claim under Count I, Defendants' Motion is granted as to all Defendants; with respect to each of Plaintiffs' claims under Counts II, III, IV, V, VI, and VII, Defendants' Motion is granted as to all Defendants.

The Court will deny Plaintiffs' Motion for Partial Summary Judgment in all respects.

An appropriate Order will issue.

/s/
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

October 27, 2010
Alexandria, Virginia